824 So.2d 977 (2002)
Paul Wesley JENKINS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D00-711.
District Court of Appeal of Florida, Fourth District.
August 21, 2002.
*979 Paul Wesley Jenkins, Belle Glade, pro se.
Robert A. Butterworth, Attorney General, Tallahassee, and Don L. Rogers, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
GROSS, J.
We grant the state's motion for rehearing, withdraw our opinion issued on December 5, 2001, and substitute the following in its place.
On rehearing, we address the summary denial of two of appellant's claims for post-conviction relief under Florida Rule of Criminal Procedure 3.850. Appellant contends that his attorney was ineffective by: (1) failing to assert a cause challenge or strike a juror who expressed reluctance about holding the state to its burden of proof; and (2) compromising the defense *980 objection to the state's systematic exclusion of African American jurors. We affirm the summary denial because the record does not support a finding of prejudice to the defendant that is necessary for post-conviction relief.
On the first claim, appellant argues that his lawyer was incompetent because juror Galbraith should have been stricken for cause. The state answered by arguing that the juror's responses did not indicate any bias, taken in the context of the entire voir dire. The trial court agreed, attaching to its order the portions of the transcript covering the questioning of juror Galbraith.
During voir dire, the juror stated that his daughter was a police officer and that he would tend to give police officers' testimony "a little more weight." The juror said that the word "every" bothered him in the instruction that the state had the burden to prove each element of the crime "beyond every reasonable doubt." Upon further questioning, the juror stated that he would be fair and impartial. Neither side questioned him further about his comment on the reasonable doubt jury instruction. Appellant used only seven of his ten peremptory strikes during voir dire; he did not attempt to challenge juror Galbraith for cause.
This case lands at the crossroads of fundamental error and post-conviction relief. Appellant's lawyer neither objected to juror Galbraith, nor sought to excuse him with a peremptory challenge. The issue was therefore not preserved for direct appeal. Nor was it so serious as to amount to fundamental error. Seeking post-conviction relief, appellant argues that his lawyer was incompetent for allowing juror Galbraith to sit.
When a party raises a cause challenge to a juror, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984). In applying this test, the trial courts must utilize the following rule of Singer v. State:
[I]f there is a basis for any reasonable doubt as to any juror's possessing that state of mind which will enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial[,] he should be excused on motion of a party, or by the court on its own motion.
109 So.2d 7, 23-24 (Fla.1959); accord Hill v. State, 477 So.2d 553, 555 (Fla.1985); Lowe v. State, 718 So.2d 920, 921-22 (Fla. 4th DCA 1998).
The requirement of a timely objection to preserve the denial of a cause challenge for appeal serves a number of functions in our legal system. An objection during jury selection promotes judicial economy by allowing the court to remove an unqualified juror before the trial has begun, when other jurors are available for selection. A timely objection alerts the court and the other party to a problem, making possible further questioning to shed light on a potential juror's fitness to serve. A ruling on a juror's qualifications may turn on the way a juror answers a question; a trial judge is best able to evaluate a juror's qualifications when the juror's facial expression and tone of voice are fresh in the judge's mind. Seating a juror who does not pass the Singer test for juror competency creates an error not subject to harmless error analysis. For this reason, it is important for a court to rule on a juror's qualifications before a trial begins.
Finally, requiring the parties to voice challenges to objectionable jurors *981 places the power of the jury selection in the hands of the parties, not the judge. The "methods of jury voir dire are subjective and individualistic." Meeks v. State, 418 So.2d 987, 988 (Fla.1982); accord Miller v. Francis, 269 F.3d 609, 620 (6th Cir.2001) (observing that "[f]ew decisions at trial are as subjective or prone to individual attorney strategy as juror voir dire, where decisions are often made on the basis of intangible factors"). Recognizing that the parties in a trial should have a large say in the choice of jurors, Florida has preserved the right of the parties to individually examine the jurors. See Fla. R.Crim. P. 3.300(b) (stating that "[c]ounsel for both the state and defendant shall have the right to examine jurors orally on their voir dire"); Fla. R. Civ. P. 1.431(b) (providing that "the right of the parties to conduct a reasonable examination of each juror orally shall be preserved"). A legal system that routinely used post-conviction relief as a vehicle for second guessing juror qualifications in the absence of a timely objection would encourage trial judges to intervene in the jury selection process and impose their views regarding which jurors satisfied objective standards of fairness.
On direct appeal, to preserve for appellate review a claim that the trial court improperly denied a cause challenge to a juror, a defendant must exhaust his peremptory challenges, request an additional peremptory challenge from the court, and demonstrate that an objectionable juror was seated. See Trotter v. State, 576 So.2d 691, 693 (Fla.1990); Cason v. State, 760 So.2d 283, 284 (Fla. 4th DCA 2000). As the supreme court has explained, a trial judge's erroneous refusal to grant a cause challenge abridges a defendant's
right to peremptory challenges by reducing the number of those challenges available him. Florida and most other jurisdictions adhere to the general rule that it is reversible error for a court to force a party to use peremptory challenges on persons who should have been excused for cause, provided the party subsequently exhausts all of his or her peremptory challenges and an additional challenge is sought and denied.
Hill, 477 So.2d at 556. To establish reversible error where he exhausted his peremptory challenges, a defendant must then identify a specific juror whom he otherwise would have struck peremptorily and who actually sat on the jury. "The defendant cannot stand by silently while an objectionable juror is seated and then, if the verdict is adverse, obtain a new trial." Trotter, 576 So.2d at 693.
Typically, on direct appeal, only fundamental errors may be corrected in the absence of a timely objection at trial. Much has been written trying to characterize a fundamental error. Fundamental error has been described as the type of error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Rogers v. State, 783 So.2d 980, 1002 (Fla.2001); Kilgore v. State, 688 So.2d 895, 898 (Fla.1996). "Fundamental error has been defined as one that goes to the essence of a fair and impartial trial, error so fundamentally unfair as to amount to a denial of due process." Scoggins v. State, 691 So.2d 1185, 1189 (Fla. 4th DCA 1997). A fundamental error so damages "the fairness of the trial that the public's interest in our system of justice justifies a new trial even when no lawyer took the steps necessary to give a party the right to demand a new trial" on direct appeal. Hagan v. Sun Bank of Mid-Florida, 666 So.2d 580, 586 (Fla. 2d DCA 1996), disapproved on other grounds by Murphy v. Int'l Robotic Sys., Inc., 766 So.2d 1010 *982 (Fla.2000). In more mundane terms, a fundamental error is one where a judicial mind steeped in fairness reviews the facts and reflexively responds, "Outrageous!"
Proceedings under rule 3.850 are not to be used as a second appeal. See Medina v. State, 573 So.2d 293, 295 (Fla. 1990). A lawyer's competence in failing to make a cause challenge should not be reviewed in a 3.850 proceeding in the same way that a denial of a cause challenge is reviewed on direct appeal. To do so is to undermine the trial process and to nullify the reasons for requiring a timely objection in the first place. Because a defendant must demonstrate prejudice in a 3.850 proceeding, post-conviction relief based on a lawyer's incompetence with regard to the composition of the jury is reserved for a narrow class of cases where prejudice is apparent from the record, where a biased juror actually served on the jury.
Under Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a convicted defendant's claim that his lawyer's "assistance was so defective as to require reversal of a conviction" has two elements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Where a lawyer's incompetence involves the failure to exercise a cause challenge, the proper inquiry is not whether the trial court would have sustained the challenge had it been made at trial. The Singer test is not concerned with actual prejudice to a defendant. Singer's "any reasonable doubt" standard encourages some liberality in granting cause challenges at a time when the cost to the legal system is minimal.
After trial, the Strickland requirement of actual prejudice imposes a more stringent test before a new trial can be ordered for the failure to object to a person's service on a jury. It is whether the lawyer's failure to raise a challenge resulted in a biased juror serving on the jury. See Goeders v. Hundley, 59 F.3d 73, 75 (8th Cir.1995) (holding that where a claim of ineffective assistance of counsel is grounded in the claim that counsel failed to strike a biased juror, a defendant "must show that the juror was actually biased against him"); Hughes v. United States, 258 F.3d 453, 458 (6th Cir.2001) (citing Goeders). The nature of the juror's bias should be patent from the face of the record. Only where a juror's bias is so clear can a defendant show the necessary prejudice under Strickland, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. 2052; accord Mickens v. Taylor, ___ U.S. ___, ___, 122 S.Ct. 1237, 1240, 152 L.Ed.2d 291 (2002).
In this context, the search for a biased juror in a 3.850 proceeding is analogous to the search for fundamental error on direct appeal. The seating of a biased juror is the type of problem to which a trial judge must be sensitive, even in the absence of an objection. If an objection to a juror's qualifications can be waived by failing to make a timely objection, the error is not a fundamental one. *983 And if a lawyer's "error" regarding a juror's qualifications is not so serious as to be the equivalent of fundamental error, then post-conviction relief is not appropriate.[1]
In this case, the record does not demonstrate that juror Galbraith was so biased that he was unqualified to serve on the jury. In the abstract, a prospective juror's tendency to trust the police is not unusual, nor is a juror's initial discomfort with legal concepts such as "reasonable doubt" or the right of a defendant not to take the witness stand. We have great confidence in the tendency of jurors to do the right thing after hearing the evidence in a case and being instructed on the law from the judge. Here, juror Galbraith said that he could be fair and impartial. There was nothing to alert the trial court that to allow the juror to sit was to drive the stake of fundamental error through the heart of the case.
Unlike the juror in Thompson v. State, 796 So.2d 511, 517 (Fla.2001), this was not a juror who had "extreme difficulty" with a crucial legal concept. Nor does this case present an issue of bias like Johnson v. Armontrout, 961 F.2d 748 (8th Cir.1992), where recycled jurors in a defendant's case heard damaging testimony about the defendant when sitting as jurors in the prior trial of a co-defendant. Here, no evidentiary hearing was required in the 3.850 proceeding, because the record did not demonstrate that a biased juror served on the jury. There was therefore no showing of prejudice under Strickland.
The second ineffectiveness claim involved the state's use of its peremptory challenges. Defense counsel objected to each of the state's peremptory strikes to African American jurors. The trial court found that the state was able to give a race neutral reason for each strike. However, after jury selection was completed, the court was troubled by the absence of African Americans on the jury and the state's use of five peremptory challenges on African American members of the venire. The judge then found that the cumulative effect of the strikes demonstrated that the prosecutor did not have race neutral motives in the selection process. The court began to rule that two of the stricken jurors would have to be seated, but the defense offered a compromise: to seat one of the jurors who had been stricken. Appellant agreed to that solution on the record, with the understanding that he would be waiving any objection to the prosecutor's use of peremptory challenges.
In his post-conviction motion, appellant complains that he did not really understand what he was agreeing to and that he now realizes that defense counsel's advice to accept the compromise solution made no sense. He argues that by following his lawyer's advice he lost not only a more racially representative jury panel, but also an issue on appeal. The Neil[2] issue was not raised on appellant's direct appeal.
The trial court found that counsel made a reasonable strategic decision to which appellant stated his agreement on the record. While the court acknowledged that in most cases such a determination could be *984 made only after an evidentiary hearing, it found that the record was clear in this case.
We agree with the trial court that the record demonstrates a reasonable strategic decision with which appellant agreed on the record. In addition, we do not see how the claim of a lawyer's failure to raise a Neil objection could ever be the basis for post-conviction relief for incompetence of counsel. Unlike the situation where a biased juror served on a jury, the failure of a lawyer to raise a Neil challenge does not mean that the jury was biased. The state might have acted in bad faith in exercising its peremptory challenges, but the jury trying the case might have been simonpure in its objectivity and ability to follow the law. In such a situation, there can be no showing that counsel's failure to assert a Neil challenge had any effect on the defendant's ability to receive a fair trial. Thus, there can be no prejudice sufficient to support post-conviction relief.
SHAHOOD and MAY, JJ., concur.
NOTE: MAY, J., was not a member of the original panel, but has had the opportunity to review the entire proceeding.
NOTES
[1] In a situation where the record demonstrates that an ostensibly biased juror served on a jury, without objection, then a hearing is appropriate to see if the defense attorney had a tactical reason for not challenging the juror for cause.
[2] State v. Neil, 457 So.2d 481 (Fla.1984), "effected a sea change in the law surrounding jury selection" and set forth a test for "trial courts to apply in ruling on the claim that a party had exercised a peremptory challenge solely on the basis of race." Young v. State, 744 So.2d 1077, 1079 (Fla. 4th DCA 1999).