961 So.2d 312 (2007)
Robert CARRATELLI, Petitioner,
v.
STATE of Florida, Respondent.
No. SC06-97.
Supreme Court of Florida.
July 5, 2007.
*315 Marcia J. Silvers of Dunlap and Silvers, P.A., Miami, FL, for Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida, Celia Terenzio, Bureau Chief, and David M. Schultz, Assistant Attorney General, West Palm Beach, FL, for Respondent.
CANTERO, J.
In this case, we explain the standard that courts should apply in deciding whether a trial counsel's failure to preserve a challenge to a potential juror constitutes ineffective assistance of counsel. In doing so, we resolve a conflict concerning the application of the test enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the case we review, the Fourth District Court of Appeal held that a defendant establishes prejudice under Strickland by proving that a biased juror served on the jury. See Carratelli v. State, 915 So.2d 1256 (Fla. 4th DCA 2005) (en banc) (Carratelli II). The court certified conflict with Austing v. State, 804 So.2d 603 (Fla. 5th DCA 2002). That case held that the defendant must show only that a reasonable doubt existed about the juror's impartiality, which is the same standard used on direct appeal. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.; see also Carratelli v. State, 935 So.2d 499 (Fla.2006) (granting review). We agree with the Fourth District. Below we (I) summarize the facts and holdings of the cases in conflict; (II) discuss the different standards applicable on appeal and in the postconviction context; (III) analyze whether the trial or the appeal should be the focus of the prejudice analysis; and (IV) define and apply the test for demonstrating whether counsel's failure to preserve a juror challenge resulted in prejudice to the defendant.

I. THE CASES IN CONFLICT
The petitioner, Robert Carratelli, was charged with six counts of vehicular homicide stemming from an automobile collision. Media coverage of the case rendered impaneling a jury difficult. During jury selection, defense counsel moved to strike several jurors for cause, alleging that they could not be impartial. When his challenges *316 were denied, Carratelli struck three of the potential jurors (Johnson, Lott, and Nesbitt) with peremptory challenges. When the trial court denied his cause challenge to juror Inman, however, Carratelli used his remaining peremptory strike on another person; thus, Inman remained on the jury. The jury subsequently convicted Carratelli on all counts.
On appeal, Carratelli alleged that the trial court erred in denying his challenges for cause. Carratelli v. State, 832 So.2d 850, 852 (Fla. 4th DCA 2003) (Carratelli I). Citing relevant excerpts from the voir dire transcript, the Fourth District agreed that the trial court abused its discretion in denying challenges to the three jurors whom the defendant struck with peremptory challenges:
Here, the record demonstrates reasonable doubts concerning Nesbitt's, Johnson's, and Lott's abilities to be fair and impartial. Those doubts were not dispelled during subsequent questioning. Each of these jurors expressed significant reservations about their suitability to sit as jurors in this case. While a prospective juror's own perception of his or her unfitness to sit as a fair and impartial juror in a particular case does not end the inquiry, such an assessment cannot easily be disregarded. Because Nesbitt's, Johnson's, and Lott's responses created a reasonable doubt as to their ability to sit as fair and impartial jurors, the trial court abused its discretion in denying appellant's challenges for cause to this trio.
Id. at 854-55. Despite finding error as to these three, however, the district court denied Carratelli a new trial because his defense counsel failed to preserve the claim. Id. at 856. The district court found that counsel's statement to the trial court after the State accepted the jury "was neither a motion nor a request for additional peremptory challenges," and that even if the statement was deemed to be such, counsel failed to obtain a ruling on it. Id. Accordingly, the court found the errors had not been preserved. Although Carratelli also appealed the denial of his cause challenge to juror Inman, the Fourth District did not address the claim, and thus affirmed the denial of the cause challenge as to Inman as well.[1]
Carratelli then filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. He alleged that trial counsel was ineffective for failing to preserve the denial of the cause challenges. Carratelli II, 915 So.2d at 1258. Carratelli alleged that he was prejudiced because his convictions would have been reversed on appeal and because one juror  Inman  "who was biased against [him] and who should have been excused for cause, actually served on the jury." The circuit court denied the motion, and Carratelli appealed.
The Fourth District equated the failure to preserve a challenge for cause with the failure to raise one. Both, the court said, "result in an issue not properly presented to the trial court for a ruling." Id. Focusing on the prejudice prong of Strickland, the district court said:
Where a lawyer's incompetence involves the failure to exercise or preserve a cause challenge, the proper inquiry for deciding whether prejudice under Strickland has occurred is not to ask whether the trial court would have sustained the challenge had it been made at trial, or whether the appellate court *317 would have reversed the conviction had the objection been preserved. The Strickland requirement of actual prejudice imposes a stringent test for granting postconviction relief based on the failure to preserve a cause objection to a juror.
The test is whether the failure to preserve a challenge to a juror by sufficiently bringing the objection to the trial judge's attention "resulted in a biased juror serving on the jury."
Id. at 1260 (quoting Jenkins v. State, 824 So.2d 977, 982 (Fla. 4th DCA 2002)). The court then applied this standard to Carratelli's case. Noting that three of the four challenged jurors did not serve on the jury, the district court examined the voir dire statements of the remaining juror and held that "juror Inman's slight familiarity with the case did not rise to that level of actual bias necessary for postconviction relief." Id. at 1261. The court certified conflict with Austing. Id. at 1263.
In Austing, it was the State that challenged defense counsel's peremptory strike. The trial court ruled that defense counsel's response to the State's challenge was not race-neutral. Austing, 804 So.2d at 604.[2] Defense counsel failed to preserve the error by renewing the objection before the jury was sworn. Id. n. 1. Austing later filed a postconviction motion alleging that his counsel was ineffective. The circuit court denied it, holding that Austing had not established prejudice by showing that with a different juror the outcome of the trial would have been different. The Fifth District reversed. The court addressed the prejudice prong of Strickland, stating that "there can never be a showing as to what would have occurred with a different jury," id., and concluded:
The trial court's erroneous denial of Austing's peremptory challenge was per se reversible error, and, if properly preserved, would have resulted in a reversal by this court on direct appeal. Therefore, it is apodictic that the result would have been different-i.e., reversal on appeal-had trial counsel been effective; therefore, the two-pronged Strickland test has been met.
Id. at 605 (citations omitted).
Therefore, Carratelli and Austing conflict on which standard to apply for determining prejudice when a defendant claims that defense counsel was constitutionally ineffective for failing to preserve a juror challenge. The Fourth District held that the defendant must demonstrate that someone actually biased against him served as a juror. The Fifth District, on the other hand, looked to the outcome of the appeal  not the trial  to determine prejudice. In that district, a defendant establishes prejudice if the error that counsel failed to preserve would have resulted in reversal on appeal  that is, if the defendant could establish a reasonable doubt concerning the potential juror's impartiality.

II. REVIEWING JUROR CHALLENGES ON APPEAL AND POSTCONVICTION
"[T]he test for prejudicial error in conjunction with a direct appeal is very different from the test for prejudice in conjunction with a collateral claim of ineffective assistance." Sanders v. State, 847 So.2d 504, 506 (Fla. 1st DCA 2003) (en banc) (quoting Hill v. State, 788 So.2d 315, 318 (Fla. 1st DCA 2001)), approved, 946 *318 So.2d 953 (Fla.2006). On direct appeal, to obtain a new trial a defendant alleging the erroneous denial of a cause challenge must show only that preserved error occurred. See Goodwin v. State, 751 So.2d 537, 544 (Fla.1999). To obtain postconviction relief, however, the standard is much more strict.

A. Demonstrating Reversible Error on Appeal
The decision whether to excuse a juror for cause is a mixed question of fact and law that falls within the trial court's discretion. Busby v. State, 894 So.2d 88, 95 (Fla.2004), cert. denied, 545 U.S. 1150, 125 S.Ct. 2976, 162 L.Ed.2d 906 (2005); Singer v. State, 109 So.2d 7, 22 (Fla.1959). "The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984) (citing Singer, 109 So.2d at 24). When a party seeks to strike a potential juror for cause, the trial court must allow the strike when "there is basis for any reasonable doubt" that the juror had "that state of mind which w[ould] enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial." Singer, 109 So.2d at 23-24; see also Ault v. State, 866 So.2d 674, 683 (Fla.2003) (same). Courts have held that ambiguities or uncertainties about a juror's impartiality should be resolved in favor of excusing the juror. See Cottrell v. State, 930 So.2d 827, 829 (Fla. 4th DCA 2006) (quoting Huber v. State, 669 So.2d 1079, 1081 (Fla. 4th DCA 1996) ("This court has held that it is error not to grant a challenge for cause when there is a basis for any reasonable doubt as to the juror's ability to render an impartial verdict, and that close cases should be resolved in favor of excusing the juror rather than leaving doubt.")); Smith v. State, 907 So.2d 582, 585 (Fla. 5th DCA 2005) (same).
Under our cases, the preservation of a challenge to a potential juror requires more than one objection. When a trial court denies or grants a peremptory challenge, the objecting party must renew and reserve the objection before the jury is sworn. See Zack v. State, 911 So.2d 1190, 1204 (Fla.2005). "By not renewing the objection prior to the jury being sworn, it is presumed that the objecting party abandoned any prior objection he or she may have had and was satisfied with the selected jury." Id.
The rule is not a mere technicality designed to place onerous burdens on overstressed trial counsel. In Joiner v. State, 618 So.2d 174 (Fla.1993), we explained its purpose:
We agree with the district court that counsel's action in accepting the jury led to a reasonable assumption that he had abandoned, for whatever reason, his earlier objection. It is reasonable to conclude that events occurring subsequent to his objection caused him to be satisfied with the jury about to be sworn. We therefore approve the district court to the extent that the court held that Joiner waived his Neil objection when he accepted the jury. Had Joiner renewed his objection or accepted the jury subject to his earlier Neil objection, we would rule otherwise. Such action would have apprised the trial judge that Joiner still believed reversible error had occurred. At that point the trial judge could have exercised discretion to either recall the challenged juror for service on the panel, strike the entire panel and begin anew, or stand by the earlier ruling.
Id. at 176; see also Zack v. State, 911 So.2d at 1204 (reaffirming Joiner and holding that a Neil issue "is not preserved for *319 appellate review if the party objecting to the challenge fails to renew the objection before the jury is sworn").[3] In other words, renewing an objection before the jury is sworn gives the trial court one last chance to correct a potential error and avoid a possible reversal on appeal. It also allows counsel to reconsider the prior objection once a jury panel has been selected. Without such a requirement, the defendant "could proceed to trial before a jury he unqualifiedly accepted, knowing that in the event of an unfavorable verdict, he would hold a trump card entitling him to a new trial." Joiner, 618 So.2d at 176 n. 2; see also Trotter v. State, 576 So.2d 691, 693 (Fla.1990) (noting that these requirements exist so that "[t]he defendant cannot stand by silently while an objectionable juror is seated and then, if the verdict is adverse, obtain a new trial").
If the issue has been preserved, courts review the trial court's discretionary decision for manifest error. The appellate court examines the record, keeping in mind that the trial court "has a unique vantage point in the determination of juror bias" that is unavailable to us in the record. Smith v. State, 699 So.2d 629, 635-36 (Fla.1997). When a defendant preserves a cause challenge, he must demonstrate on appeal both that the trial court erred in determining the juror's competency and that the denial of the challenge caused prejudice. See Conde v. State, 860 So.2d 930, 941 (Fla.2003). Where the record demonstrates a reasonable doubt about a juror's ability to be impartial, the trial court abused its discretion in denying the cause challenge. See Busby, 894 So.2d at 95; see also Peters v. State, 874 So.2d 677, 679 (Fla. 4th DCA 2004) ("While the decision to accept or dismiss a putative juror is considered an exercise in discretion, we view the seating of a juror as to whom there is a reasonable doubt concerning impartiality an abuse of discretion and thus `manifest error.'").
Having demonstrated error, the defendant must then show that the error requires reversal. The "expenditure of a peremptory challenge to cure the trial court's improper denial of a cause challenge constitutes reversible error if a defendant exhausts all remaining peremptory challenges and can show that an objectionable juror has served on the jury." Busby, 894 So.2d at 96-97.[4] The juror who served need not have been "legally objectionable"  that is, excusable for cause. Id. A defendant need only show "the same type of harm [peremptory] challenges are intended to cure  the seating of a juror whom the defendant suspects, but cannot prove, is biased." Id. at 100-01.
Even where the reviewing court concludes that a juror who actually served on the jury should have been stricken, however, the court will not reverse for a *320 new trial if the error has not been preserved. See Singer, 109 So.2d at 19 (finding reasonable doubt as to one juror's impartiality, but refusing relief on this claim because it was not preserved for review).

B. Demonstrating Prejudice in the Postconviction Context
As demonstrated above, the standard for obtaining a reversal upon the erroneous denial of a cause challenge is relatively lenient: a defendant need only show that an objectionable juror  whether or not actually biased  sat on the jury. Our consideration of postconviction claims, however, is more restrictive. As we recently reiterated:
We have emphasized that "once a conviction has been affirmed on direct appeal `a presumption of finality and legality attaches to the conviction and sentence.'" . . . "[T]he test for prejudicial error in conjunction with a direct appeal is very different from the test for prejudice in conjunction with a collateral claim of ineffective assistance."
Sanders, 946 So.2d at 959 (citations omitted) (quoting Goodwin v. State, 751 So.2d 537, 546 (Fla.1999), and Sanders, 847 So.2d at 506). A defendant's claim that his counsel offered ineffective assistance at trial, for whatever reason, must be analyzed under the standard the Supreme Court enunciated in Strickland. The purpose of the right to the effective assistance of counsel is to "ensure a fair trial," Strickland, 466 U.S. at 686, 104 S.Ct. 2052, defined as "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." Id. at 685, 104 S.Ct. 2052. The Supreme Court established the following standard for determining when counsel has provided ineffective assistance warranting postconviction relief:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687, 104 S.Ct. 2052.
Specifically, the Court stressed that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052. Therefore, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." Witt v. State, 387 So.2d 922, 925 (Fla.1980) (quoting United States v. Addonizio, 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979)).

III. WHICH IS THE RELEVANT PROCEEDING: THE TRIAL OR THE APPEAL?
Both the district court below and the court in Austing agree that the Strickland prejudice standard applies. The courts disagree, however, on which forum should be the focus of the analysis. The standard *321 requires the postconviction court to consider whether there is a reasonable probability that the result of the proceeding would have been different. In these circumstances, the question becomes, which is the "proceeding" whose potential result should be scrutinized  the trial (as Carratelli II holds) or the appeal (as Austing holds)? Carratelli argues for the latter test based on his contention that (A) counsel renewing (or failing to renew) an objection before the jury is sworn acts as appellate counsel, and (B) the prejudice for such a failure occurs on appeal. We address these contentions below.

A. The Role of Trial Counsel in Preserving Objections
Carratelli's claim that, in preserving an objection, counsel acts as appellate counsel, and therefore the prejudice analysis should focus on the appeal, is based on the Eleventh Circuit's decision in Davis v. Secretary for the Department of Corrections, 341 F.3d 1310 (11th Cir.2003). There, a Florida defendant filed a petition for habeas corpus in federal court alleging that trial counsel was ineffective for failing to renew (and thus preserve) an objection to the State's peremptory challenge. Davis, 341 F.3d at 1312-13; see Davis v. State, 710 So.2d 723, 724 (Fla. 3d DCA 1998) (finding that the objection was not preserved); Davis v. State, 763 So.2d 332 (Fla. 3d DCA 2000) (affirming the summary denial of Davis's postconviction motion alleging ineffective assistance of counsel for failing to preserve the claim). The Eleventh Circuit acknowledged that under Joiner, to preserve an objection counsel had to renew it at the conclusion of voir dire or accept the jury with a reservation. The federal court decided, however, that in such an "unusual" circumstance counsel acts as trial counsel when first raising the issue, but as appellate counsel when renewing it. See Davis, 341 F.3d at 1315-16; see also Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir.) ("This Court held that because the failure of counsel was solely in his role as appellate counsel at trial (those are not the words we used in Davis, but it is what we meant), the prejudice inquiry should focus on the effect that counsel's omission at trial had on the appeal."), cert. denied, ___ U.S. ___, 127 S.Ct. 587, 166 L.Ed.2d 436 (2006). The court concluded that the failure to preserve the issue by renewing the objection was error related to the appeal and "by its nature, unrelated to the outcome of [the] trial." 341 F.3d at 1315. We believe that Davis misreads our opinion in Joiner.
As we explained in Joiner, jury selection is by nature a dynamic process. The requirement of renewing objections before the jury is impaneled allows both the attorney and the court, knowing the final composition of the jury, to reconsider their positions. From the attorney's point of view, many factors may militate in favor of abandoning a previous objection. Joiner, 618 So.2d at 176. From the court's point of view, the trial court may "exercise[] discretion to either recall the challenged juror for service on the panel, strike the entire panel and begin anew, or stand by the earlier ruling." Id. Thus, the renewal requirement provides the party with the opportunity at trial to timely raise a claim previously denied (or decide not to), and provides the trial court the opportunity to readdress the claim and possibly correct an error. Id. These considerations are quintessentially issues about the trial, not the appeal. As the Fourth District noted: "The requirement of preservation is central to the trial process." Carratelli II, 915 So.2d at 1262. Therefore, contrary to Carratelli's argument, the requirements we imposed in Joiner address the trial itself. We reject the proposition that trial counsel renewing an objection (or failing to *322 do so) before a jury is impaneled is acting as appellate counsel.

B. The Prejudice Occurs at Trial
Carratelli also argues that the prejudice a defendant suffers when trial counsel fails to renew an objection to the jury occurs on appeal, not at trial. The Fourth District held that the focus must be on the trial. Carratelli II, 915 So.2d at 1263-64. The Fifth District in Austing, however, stated that where counsel fails to preserve reversible error in jury selection, "there can never be a showing as to what would have occurred with a different jury," 804 So.2d at 604, and concluded that "it is apodictic that the result would have been different  i.e., reversal on appeal." Id. at 605. We agree with the Fourth District.
In establishing the standard for postconviction relief, the Supreme Court stated that in determining prejudice, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." Strickland, 466 U.S. at 696, 104 S.Ct. 2052 (emphasis added). In this case, the proceeding "whose result is being challenged" is the trial. Counsel's failure to renew the objection  the subject of the ineffective assistance of counsel claim  occurred at the trial. The result at trial  a conviction  is what Carratelli challenges; and had counsel renewed the objection, the trial court might very well have reconsidered the prior denial and granted the cause challenge. Moreover, the prejudice  a juror to whom Carratelli objects  occurs at trial.
Again relying on the Eleventh Circuit's decision in Davis, Carratelli argues that the prejudice occurs on appeal. Davis applied the United States Supreme Court's decision in Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). See Davis, 341 F.3d at 1315 ("Flores-Ortega thus establishes that the prejudice showing required by Strickland is not always fastened to the forum in which counsel performs deficiently. . . ."). But Flores-Ortega does not support petitioner's argument. In that case, the defendant alleged that trial counsel was ineffective for failing to file a notice of appeal. Flores-Ortega, 528 U.S. at 473, 120 S.Ct. 1029. The Court held that to establish prejudice in such a case a defendant must "demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484, 120 S.Ct. 1029. The Court compared the situation to that in Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Id. at 485, 120 S.Ct. 1029. In Hill, the defendant alleged counsel's ineffective assistance in advising the defendant about a guilty plea. The Court held that to demonstrate prejudice, the defendant had to show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S.Ct. 366. In Flores-Ortega, the Supreme Court rejected any requirement that a defendant identify meritorious issues that could have been raised on appeal. 528 U.S. at 486, 120 S.Ct. 1029. The Court stated that "[i]n adopting this standard, we follow the pattern established . . ., requiring a showing of actual prejudice (i.e., that, but for counsel's errors, the defendant might have prevailed) when the proceeding in question was presumptively reliable, but presuming prejudice with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." Id. at 484, 120 S.Ct. 1029. Thus, the Supreme Court did not hold that the Strickland standard, as applied to trial counsel, is sometimes assessed based on *323 the outcome of the appeal, as the Eleventh Circuit found in Davis. See Davis, 341 F.3d at 1315.[5] Rather, it held that prejudice may be presumed when the defendant essentially was deprived of any proceeding at all. In Flores-Ortega, counsel's failure to file a notice of appeal deprived the defendant of an appeal. In Hill, counsel's deficient advice deprived the defendant of a trial.
In this case, Carratelli alleged that trial counsel was ineffective for failing to preserve reversible error in jury selection. He was not deprived of a judicial proceeding, as in Hill and Flores-Ortega, and he is not entitled to a new trial simply because reversible error was not preserved. He had a trial that was presumptively reliable, and under Strickland, it is that trial "whose result is being challenged." Accordingly, we hold that a defendant alleging that counsel was ineffective for failing to object or preserve a claim of reversible error in jury selection must demonstrate prejudice at the trial, not on appeal.

IV. DEMONSTRATING PREJUDICE
Having concluded that a defendant alleging counsel's ineffectiveness in failing to renew an objection to the jury must demonstrate prejudice at the trial, we now consider the standard a court must apply. Below we (A) conclude that to establish prejudice the defendant must demonstrate that an actually biased juror served on the jury; and (B) apply this standard to Carratelli's case.

A. The Standard for Demonstrating Prejudice
Taking into account both the differing standards that apply to direct appeals and postconviction proceedings and the concerns about the contemporaneous objection rule, the Fourth District held that to meet the prejudice prong of Strickland, the defendant must demonstrate that someone on the jury was actually biased against the defendant. Carratelli II, 915 So.2d at 1260 (citing Miller v. Webb, 385 F.3d 666, 674 (6th Cir.2004)). The district court relied on its prior decision in Jenkins, which held that the test for prejudice should be "whether the lawyer's failure to raise a challenge resulted in a biased juror serving on the jury." Jenkins, 824 So.2d at 982 (citing Goeders v. Hundley, 59 F.3d 73 (8th Cir.1995)). In Jenkins, the court recognized that "[a] lawyer's competence in failing to make a cause challenge should not be reviewed in a 3.850 proceeding in the same way that a denial of a cause challenge is reviewed on direct appeal." Id. at 982. The court declined to apply the Singer standard, which applies to direct appeals. Id. As explained above, under this standard when the record supports "any reasonable doubt" about a juror's impartiality, the reviewing court will find that the trial court abused its discretion by denying the challenge. Busby, 894 So.2d at 96. Both Jenkins and Carratelli II held that in postconviction proceedings the error must be egregious. See Jenkins, 824 So.2d at 982; Carratelli II, 915 So.2d at 1261. As the district court stated:
From a practical standpoint, a jury selection error justifying postconviction relief is so fundamental and glaring that it should have alerted a trial judge to intervene, even in the absence of a proper objection, to prevent an actually biased *324 juror from serving on the jury, thereby irrevocably tainting the trial. Where reasonable people could disagree about a juror's fitness to serve, the showing of prejudice required for postconviction relief is lacking.
Carratelli II, 915 So.2d at 1261.
We agree that while the Singer standard may be appropriate for direct appeals, it is not appropriate as a postconviction standard. Under Strickland, to demonstrate prejudice a defendant must show that there is a reasonable probability  one sufficient to undermine confidence in the outcome  that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 694, 104 S.Ct. 2052. In the context of the denial of challenges for cause, such prejudice can be shown only where one who was actually biased against the defendant sat as a juror. We therefore hold that where a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased.
A juror is competent if he or she "can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk, 446 So.2d at 1041. Therefore, actual bias means bias-in-fact that would prevent service as an impartial juror. See United States v. Wood, 299 U.S. 123, 133-34, 57 S.Ct. 177, 81 L.Ed. 78 (1936) (stating, in a case involving a statute permitting government employees to serve as jurors in the District of Columbia, that the defendant in a criminal case still has the ability during voir dire to "ascertain whether a prospective juror . . . has any bias in fact which would prevent his serving as an impartial juror"). Under the actual bias standard, the defendant must demonstrate that the juror in question was not impartial  i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record. See Carratelli II, 915 So.2d at 1260 (citing Jenkins, 824 So.2d at 982); see also Patton v. Yount, 467 U.S. 1025, 1038-40, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (stating that in habeas review a state court's findings are presumed correct and that although the record showing the ambiguous voir dire answers of three jurors challenged for cause "arouses some concern, only the trial judge could tell which of these answers was said with the greatest comprehension and certainty").
We disagree with Austing's application of the Strickland prejudice standard. In Austing, the Fifth District held that failure to preserve a juror challenge that would constitute reversible error on appeal fulfills both prongs of Strickland. Such a lenient standard disregards the fundamental differences, which we have discussed, between review on appeal and the much higher standard applicable to postconviction relief.
The Austing standard also eliminates the requirement for preserving error at trial. As we have explained,
[t]he requirement of a contemporaneous objection is based on practical necessity and basic fairness in the operation of a judicial system. It places the trial judge on notice that error may have been committed, and provides him an opportunity to correct it at an early stage of the proceedings. Delay and an unnecessary use of the appellate process result from a failure to cure early that which must be cured eventually.
Castor v. State, 365 So.2d 701, 703 (Fla. 1978). Applying the Singer standard in the postconviction context would essentially eviscerate the requirement of contemporaneous *325 objections because it would apply the same standard in the postconviction context to unpreserved claims that applies on appeal to preserved claims. A defendant asserting ineffective assistance for failing to preserve a cause challenge would have no greater burden than a defendant asserting preserved error on appeal. As the Third District stated in response to a similar claim that proof of an unpreserved reversible error was sufficient to meet Strickland:
If counsel should fail, as here, to preserve for appellate review an otherwise reversible error, it would be of little moment as the conviction would still be subject to being vacated based on an ineffective assistance of counsel claim. The preservation of error rule would have no real consequence as it would apply only when counsel failed to preserve points which would not have merited a reversal in any event. In effect, a "wild card" exception to the preservation of error rule would be created allowing appellate courts to pass on the merits of unpreserved, non-fundamental errors in criminal cases, and to upset criminal convictions based thereon.
Anderson v. State, 467 So.2d 781, 787 (Fla. 3d DCA 1985); see also Jenkins, 824 So.2d at 982 ("A lawyer's competence in failing to make a cause challenge should not be reviewed in a 3.850 proceeding in the same way that a denial of a cause challenge is reviewed on direct appeal. To do so is to undermine the trial process and to nullify the reasons for requiring a timely objection in the first place.").
As we have said, "[t]he sole exception to the contemporaneous objection rule applies where the error is fundamental." F.B. v. State, 852 So.2d 226, 229 (Fla.2003). To be fundamental, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." State v. Delva, 575 So.2d 643, 644-45 (Fla.1991) (quoting Brown v. State, 124 So.2d 481, 484 (Fla. 1960)). Because, as we noted above, the failure to raise or preserve a cause challenge is not reviewable on direct appeal, it cannot constitute fundamental error per se. If an appellate court refuses to consider unpreserved error, then by definition the error could not have been fundamental. Yet, as Anderson recognized, by imposing no greater burden on postconviction than on appeal, a standard such as that articulated in Austing allows courts to review  and order new trials based on  unpreserved non-fundamental error. To make matters worse, such new trials will occur much later in the process  after the postconviction motion is filed and decided, which may happen years after the original trial. If we agreed to such a standard, it would be more efficient simply to allow appellate courts to review unpreserved error even if not fundamental. Such a rule would eliminate the contemporaneous objection requirement and permit counsel to save certain arguments for appeal. We are not willing to begin a journey down that dangerous path.

B. Applying the Standard to Carratelli's Case
Having determined that the prejudice standard applicable to Carratelli's postconviction claim is whether the juror is actually biased, we consider the circumstances of this case. As stated above, Carratelli's case was the subject of much pretrial publicity, including an article appearing in the Palm Beach Post the day before jury selection began. The undisputed facts were that Carratelli was speeding through a red light when his car collided with another vehicle, killing all six passengers. Carratelli's reported defense, which he used at trial, was that he was unconscious at the *326 time because of a medical condition attendant to his Type I diabetes. Carratelli I, 832 So.2d at 857. Potential jurors were questioned about their exposure to media reports and their opinions about the case.
When Mr. Inman  the only juror at issue  was questioned, he stated that he had heard a recent newscast about the incident; had overheard  but did not participate in  a discussion in a barbershop about it; and had read the recent Post article. Although the barbershop patrons opined that Carratelli was guilty, Inman had no opinion. Asked if he could listen to the evidence, ignore the media reports and conversations he had overheard, and follow the law, Inman replied: "I believe that I could, and listen to what was here and what was said to be the law and I would follow that." Defense counsel questioned him about the barbershop conversation, and Inman responded that the barbershop patrons did not believe Carratelli's explanation for the incident. Emphasizing that he had not joined the conversation, Inman said that after hearing it, he had "not form[ed] any definite opinion of yes or no" about the case. Questioned whether he had any indefinite opinion, Inman said he knew nothing about diabetes, but he thought "there should have been some kind of forewarning [of the reaction]," "because of when you get sick you have some kind of forewarning." He did not have the opinion that Carratelli was guilty. The following exchange then occurred:
DEFENSE COUNSEL: So when you left [the barbershop] you felt that the defense that was being asserted didn't make some sense?
INMAN: That's basically it, that was my thought.
Asked about the article in the Post, Mr. Inman said he found it too "editorialized." Defense counsel continued:
DEFENSE COUNSEL: How did that do  what did that [the article] do to the opinion that you had already held about the defense not making sense?
INMAN: I believe in my own mind that if there is some  I will call them doctors, whatever that can say, that there would be no forewarning of any symptoms to cause him to stop or continue or anything like that, I would listen to it.
Later, the following exchange ensued:
DEFENSE COUNSEL: Would you say that this is a fair statement that you have an opinion about the defense but it's not  you have not positively made up your mind?
INMAN: That's correct.
DEFENSE COUNSEL: But it would certainly be more difficult for Mr. Carratelli to convince you of his innocence now than if you had not read the article had not been involved in that discussion?
INMAN: I believe that's a fair statement.
The court then questioned Mr. Inman as follows:
COURT: Mr. Inman, you used a phrase a minute ago but I don't want to put words in your mouth, as to this type of defense; I gather that you think it's possible there is a medical explanation that would explain the situation?
INMAN: Well, there's a possibility that that could happen.
COURT: And regardless of what discussions you had already, you'd be willing as a juror, to sit here and listen to whatever medical testimony you hear?
INMAN: Absolutely.
COURT: Whether it makes sense or it doesn't?
INMAN: Yes.
COURT: Would you be able to set aside any input you had, bias or prejudice, and *327 sit here and assure us all that you can be a fair and impartial juror?
INMAN: If I come in here as a juror, I will sit down with an open slate and listen to what is said and make up my mind from there.

(Emphasis added.)
After reviewing this same record on direct appeal, the Fourth District affirmed without discussing Carratelli's claim that the trial court abused its discretion in denying his cause challenge to juror Inman. See Carratelli I, 832 So.2d at 855. Then, in reviewing Carratelli's ineffective assistance claim in his 3.850 motion, the en banc court applied to these facts the actual bias standard we adopt here and held that "[j]uror Inman's slight familiarity with the case did not rise to that level of actual bias necessary for postconviction relief." Carratelli II, 915 So.2d at 1261. We agree. The record plainly shows that juror Inman held no firm opinion except that he could be fair, listen to the evidence, and follow the law. Thus, Carratelli fails to demonstrate prejudice under Strickland.

VI. CONCLUSION
The issue in this case requires us to address only the requirements for establishing prejudice under Strickland on a postconviction claim that counsel was ineffective for failing to preserve or raise a cause challenge before a jury is sworn. Accordingly, we need not address the requirements for meeting Strickland's first prong  deficient performance. In Carratelli II, the district court held that the prejudice must relate to the trial, not the appeal. Further, to obtain relief the defendant must establish actual bias. We agree. We also agree that Carratelli failed to meet that standard. Accordingly, we approve the Fourth District's decision in Carratelli II. We disapprove the Fifth District's decision in Austing to the extent it is inconsistent with our opinion.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, and BELL, JJ., concur.
NOTES
[1] In a specially concurring opinion, however, one judge argued that the trial court also erred in denying the cause challenge to Mr. Inman, who served on the jury. Carratelli I, 832 So.2d at 863.
[2] State v. Neil, 457 So.2d 481, 486 (Fla.1984), prohibited the use of peremptory challenges to exclude jurors based on race.
[3] Although Joiner involved a Neil objection, district courts have applied it to jury selection issues in general, including denial of cause challenges. See Milstein v. Mut. Sec. Life Ins. Co., 705 So.2d 639, 640 (Fla. 3d DCA 1998) (stating that the "reasoning of Joiner renders it applicable to jury selection generally" and that the court did "not think Trotter [v. State, 576 So.2d 691 (Fla.1990)] stands for the proposition that it is unnecessary for the litigant to renew the objection prior to the time that the jury is sworn"); see also Couch v. Dunn Ave. Shell, Inc., 803 So.2d 803, 805 (Fla. 1st DCA 2001) ("[W]e join the Milstein court and other Florida appellate courts in holding that Joiner is not confined to the Neil context. Thus, for the reasons discussed, we find that Couch has failed to preserve for appellate review the alleged error in failing to grant peremptory challenges.").
[4] If a defendant is granted the same number of additional peremptories as cause challenges erroneously denied, however, he cannot demonstrate prejudice. Busby, 894 So.2d at 97.
[5] The Eleventh Circuit has since recognized that Davis articulated a "razor thin exception," and acknowledged that the "reasoning and the result in Davis arguably were pushing things given what the Supreme Court said in Strickland about measuring the effect of counsel's errors at the guilt stage of a trial against the result of the trial instead of the appeal." Purvis, 451 F.3d at 739-40.