DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

ROBERT E. GREATHOUSE,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D22-990

_____

September 27, 2023

Appeal from the Circuit Court for Pinellas County; Philip J. Federico, Judge.

Howard L. Dimmig, II, Public Defender, and Gary R. Gossett, Jr., Special Assistant Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and William C. Shelhart, Assistant Attorney General, Tampa, for Appellee.

ROTHSTEIN-YOUAKIM, Judge.

A jury found Robert Greathouse guilty of sexual battery. On appeal, Greathouse argues that the trial court erred in denying him an additional peremptory challenge to remedy its earlier failure to strike for cause a juror who had suggested that she could not be fair and impartial. Although we agree that the court erred in failing to strike that juror for cause and denying Greathouse an additional peremptory challenge, we nevertheless affirm because Greathouse did not preserve

this argument.  We write to explain why.[1]

## Background

Prospective juror Ashley Mehr stated during voir dire that she had gotten the "heebie jeebies" when she first learned from the trial court that Greathouse had been charged with sexual assault.  Mehr, an elementary school teacher, attributed that reaction to having heard several students over the years recount their experiences of sexual abuse.  The following exchange then occurred between defense counsel and Mehr:

> [DEFENSE COUNSEL] MS. SEIFER-SMITH:  Okay.  And is that going to be something that's going to—I mean, it's been sticking with you all day for sure.  Is that something that's going to carry throughout the trial for you?

> PROSPECTIVE JUROR MEHR:  Kind of.  I mean, it could.
> . . . .

> MS. SEIFER-SMITH:  Okay.  And so really the reason I'm asking the question is if—if—if it's going to affect your decision-making in this case in some way, right, because the purpose of a juror is not to, you know, wipe your slate totally clean.  Obviously we all come into this with our own life experiences.  It's just whether or not you can be fair and impartial to the State and fair and impartial to the defendant in this case, Mr. Robert Greathouse.

> S*o it sounds like for you this is not the right case for you because you have some concerns about your ability to remain fair and impartial because of the experiences that you've had as a teacher.*

> PROSPECTIVE JUROR MEHR:  *I would say that is valid, yes.*

---

[1] We reject without further comment Greathouse's other arguments on appeal, including those concerning his for-cause challenges to other jurors.

(Emphasis added.)

That was the last thing Mehr said. No one asked her any follow up questions. Nor had Mehr answered any earlier questions that might have cast her reply—"I would say that is valid"—in a different light.

When Greathouse subsequently moved to strike Mehr for cause, the trial court did not recall what Mehr had said. The State then tried to refresh the court's recollection, even agreeing with defense counsel that Mehr had expressed doubt about her ability to be fair and impartial. Indeed, the State went one step further and suggested that the court ask Mehr additional questions to rehabilitate her. The court, however, rejected the suggestion and summarily denied Greathouse's motion.

After Greathouse was forced to use his sole remaining peremptory challenge to keep Mehr off the jury, he had none left to strike Tanya King-Florio, another juror whom he had also previously and unsuccessfully moved to strike for cause.[2] Accordingly, he moved for an additional peremptory challenge to strike King-Florio. By that point, however, only one other prospective juror remained. Concerned with the dwindling venire, the trial court asked: "So you don't want a jury then, is what you're telling me? You're asking for one [peremptory], or are you asking for more than that, or what? You've got one potential juror left." Defense counsel did not directly respond to the court's question but said

---

[2] Greathouse moved to strike King-Florio for cause because when asked whether her background as an educator would make her more sympathetic to victims of abuse, King-Florio responded, "I don't want to say that before I've heard all of the evidence, but I am sensitive to the material."

only, "I'm asking to—I'm asking for either the cause challenge or for an additional peremptory, so that we can strike Ms. King-Florio." The court declined to strike King-Florio, who thus became the sixth juror.

That left the trial court with the task of seating an alternate juror. Based on concerns about the remaining prospective juror's fluency in English, Greathouse asked that she also be excused. The court obliged, after which the following exchange occurred:

> THE COURT: So we're going with six, is that the plan? Or, is there somebody you can suggest, that—that the State already kicked, that you can live with? I'm not sure I'm going to ask you to give up one of the ones you already kicked. It's either that, or we go with six.
>
> [PROSECUTOR] MS. SHERWOOD: We'll take Samuel Moore back, as an alternate, if that is something the Defense wants to do.
>
> THE COURT: You want Moore as an alternate, Defense? It's the only way I know how to do it. *I don't like going with only six. If you want to do that, we can. If somebody has an emergency, we're mistrying it, if you want.* I'm not asking you to give up one you already kicked yourself. I don't think that—that would stretch the bounds of propriety. But, if they used one, and you seem to like males more than females, Moore would be their suggestion.
>
> Do you want him as an alternate?
>
> . . . .
>
> [DEFENSE COUNSEL] MS. SEIFER-SMITH: We'll accept Mr. Moore as an alternate.
>
> THE COURT: Okay. So Moore is going to be an alternate.

(Emphasis added.)

The trial court then confirmed with the parties the final

composition of the jury—six plus one alternate—reading off each juror's name.  Greathouse made no further objection at that time.  Nor did he do so when the court then called the venire back into the courtroom, announced the jury, and swore the jurors in.

### Analysis

We review for an abuse of discretion the trial court's denial of a motion to strike a juror for cause.  *See Castro v. State*, 644 So. 2d 987, 990 (Fla. 1994).[3]  "A juror must be excused for cause if any reasonable doubt exists as to whether the juror possesses an impartial state of mind."  *Kopsho v. State*, 959 So. 2d 168, 170 (Fla. 2007).  Any "ambiguities or uncertainties about a juror's impartiality should be resolved in favor of excusing the juror."  *Carratelli v. State*, 961 So. 2d 312, 318 (Fla. 2007); *see also Thomas v. State*, 958 So. 2d 1047, 1050 (Fla. 2d DCA 2007) ("In close cases, any doubt as to a juror's competency should be resolved in favor of excusing the juror rather than leaving a doubt as to his or her impartiality." (citing *Segura v. State*, 921 So. 2d 765, 766 (Fla. 3d DCA 2006))).

Considering this authority, we conclude that the trial court erred in failing to excuse Mehr for cause.  Her response during voir dire created uncertainty regarding her ability to be fair and impartial, *see Sears v. State*, 307 So. 3d 746, 754 (Fla. 4th DCA 2020) (holding that a juror's evasive answer to the question "can you be fair?" raised a reasonable doubt that the juror could render a verdict based solely on the evidence

---

[3] We apply this deferential standard because "the trial court has the opportunity to observe and evaluate the prospective juror's demeanor and credibility."  *Castro*, 644 So. 2d at 990 (citing *Lambrix v. State*, 494 So. 2d 1143, 1146 (Fla. 1986)).  We note, however, that the trial court in this case did not appear to have any independent recollection of Mehr's responses.

5

and the law), and neither the State nor the court asked any follow-up questions that might have rehabilitated her, *see Marquez v. State*, 721 So. 2d 1206, 1207 (Fla. 3d DCA 1998) ("When a juror's last response indicates that the juror is potentially prejudiced, and the response is not retracted or modified, the juror must be stricken for cause." (citing *Wilkins v. State*, 607 So. 2d 500 (Fla. 3d DCA 1992))).

"[E]xpenditure of a peremptory challenge to cure the trial court's improper denial of a cause challenge constitutes reversible error if a defendant exhausts all remaining peremptory challenges and can show that an objectionable juror has served on the jury." *Busby v. State*, 894 So. 2d 88, 96–97 (Fla. 2004); *see also Trotter v. State*, 576 So. 2d 691, 693 (Fla. 1990). To establish prejudice, the defendant need not show that the "objectionable juror" was biased; rather, the defendant need show only that the juror "actually sat on the jury" and that "the defendant either challenged [the juror] for cause or attempted to challenge peremptorily or otherwise objected to [the juror] after his peremptory challenges had been exhausted." *Trotter*, 576 So. 2d at 692–93. *But see Deviney v. State*, 322 So. 3d 563, 578 (Fla. 2021) (Lawson, J., concurring in part and concurring in result) (arguing in favor of "reced[ing] from *Trotter* and replac[ing] its per se [reversible error] rule with the harmless error standard set forth in section 924.33, Florida Statutes"). Because Greathouse was forced to use his final peremptory challenge to strike Mehr and identified King-Florio as an additional objectionable juror whom he would have struck, he "satisfied the *Trotter* standard for prejudice." *See Busby*, 894 So. 2d at 97.

But that still leaves the issue of preservation. *See Carratelli*, 961 So. 2d at 319–20 ("Even where the reviewing court concludes that a juror who actually served on the jury should have been stricken, . . . the court

6

will not reverse for a new trial if the error has not been preserved."). Although there is considerable overlap between the requirements for establishing prejudice from the error under *Trotter* and preserving the error for appellate review, they are not identical. To preserve a challenge for cause to a prospective juror, a defendant must "object to the juror[], show that he or she has exhausted all peremptory challenges and requested more that were denied, and identify a specific juror that he or she would have excused if possible." *Matarranz v. State*, 133 So. 3d 473, 482 (Fla. 2013) (quoting *Kearse v. State*, 770 So. 2d 1119, 1128 (Fla. 2000)). As stated above, Greathouse did all of that.

Preservation, however, also requires something more: a renewed objection before the jury is sworn. *See Joiner v. State*, 618 So. 2d 174, 176 (Fla. 1993) (holding that the defendant had waived his *Neil*[4] objection when he accepted the jury immediately prior to its being sworn without reserving his earlier objection, leading "to the reasonable assumption that he had abandoned, for whatever reason, his earlier objection"); *see also Carratelli*, 961 So. 2d at 318–19, 319 n.3 ("Although *Joiner* involved a *Neil* objection, district courts have applied it to jury selection issues in general, including denial of cause challenges."); *Johnson v. State*, 763 So. 2d 1214, 1215 (Fla. 2d DCA 2000) (agreeing with *Milstein v. Mut. Sec. Life Ins. Co.*, 705 So. 2d 639 (Fla. 3d DCA 1998), and concluding that a defendant who fails to renew his objection to the composition of the jury immediately before the jury is sworn fails to preserve the denial of his for-cause challenge for appellate review); *Milstein*, 705 So. 2d at 640 ("The reasoning of *Joiner* renders it applicable to jury selection generally, and it is not confined by its terms or its logic solely to situations involving *Neil* challenges.").

___

[4] *State v. Neil*, 457 So. 2d 481, 486 (Fla. 1984).

"Th[is] rule is not a mere technicality designed to place onerous burdens on an overstressed trial counsel." *Carratelli*, 961 So. 2d at 318. Rather, it "gives the court one last chance to correct a potential error and avoid a possible reversal on appeal. It also allows counsel to reconsider the prior objection once a jury panel has been selected." *Id.* at 319; *see also Milstein*, 705 So. 2d at 640 ("*Joiner* rests on the idea that it is a severe step to overturn an otherwise error-free trial based solely on a jury selection error, and particularly on an error involving peremptory challenges. *Joiner* thus mandates that the claimed error be called to the trial court's attention once more prior to the swearing of the jury, so that the court will be made aware that the objecting party is insisting on the objection, and so that the court will have a last clear chance to take corrective action if needed."). Failure to lodge the renewed objection after the jury is announced but before it is sworn indicates abandonment of the initial objection. *Zack v. State*, 911 So. 2d 1190, 1204 (Fla. 2005) ("By not renewing the objection prior to the jury being sworn, it is presumed that the objecting party abandoned any prior objection he or she may have had and was satisfied with the selected jury.").

Here, after the trial court confirmed the final panel with the parties, it was incumbent upon Greathouse to speak up once again, to give the court "one last chance to correct a potential error." *See Carratelli*, 961 So. 2d at 319; *see also Geibel v. State*, 795 So. 2d 285, 286 (Fla. 3d DCA 2001) ("In order for the jury selection objections to be preserved, they must be renewed before the jury is sworn even if the trial judge did not ask if counsel approved the jury." (citing *Milstein*, 705 So. 2d at 639)). The court's comments when it denied Greathouse's request for an additional peremptory to strike King-Florio indicated that its denial had been based at least in part on its concern that there would not be

enough jurors for a panel.  Because of the State's willingness to give up one of its strikes, however, the final panel not only had a full complement but also an alternate.  And although the court had expressed reluctance to proceed without an alternate, it also had stated that it would nonetheless do so *if that was what the defense wanted.*  Greathouse could have renewed his objection to King-Florio sitting on the jury and asked that Moore (the alternate) replace King-Florio and that the trial proceed without an alternate.  *Cf. Joiner,* 618 So. 2d at 176 ("Had Joiner renewed his objection or accepted the jury subject to his earlier *Neil* objection . . . [s]uch action would have apprised the trial judge that Joiner still believed reversible error had occurred.  At that point the trial judge could have exercised discretion to either recall the challenged juror for service on the panel, strike the entire panel and begin anew, or stand by the earlier ruling.").  Instead, Greathouse affirmatively accepted Moore as an alternate and did not raise any objection after the final composition of the jury was confirmed and before it was sworn, thereby suggesting that he was satisfied with the jury as it was and depriving the court of the "one last chance" that *Joiner* requires.  *See Carratelli,* 961 So. 2d at 319.  We thus conclude that Greathouse abandoned his objections to the jury.[5]

In sum, although we agree that the trial court erred in denying

_____

[5] We reject Greathouse's contention that the trial court's error in refusing the additional peremptory, even if unpreserved, constitutes fundamental error.  "Fundamental error is error that 'reaches down into the validity of the trial itself to the extent that a verdict of guilt could not have been obtained without the assistance of the alleged error.' " *Mendoza v. State*, 964 So. 2d 121, 131 (Fla. 2007) (quoting *Kilgore v. State*, 688 So. 2d 895, 898 (Fla. 1996)).  As stated above, Greathouse's cause challenge to King-Florio lacked merit, and Greathouse has wholly failed to show that he would have been acquitted but for King-Florio's presence on the jury.

9

Greathouse's challenge to Mehr for cause and not affording him an additional peremptory challenge to strike King-Florio, Greathouse failed to preserve that error. Because his other claims of error are meritless, we affirm the judgment and sentence in all respects.

Affirmed.

KELLY and ATKINSON, JJ., Concur.

_____

Opinion subject to revision prior to official publication.