# Supreme Court of Florida

_____

No. SC16-801
_____

**ERIC KURT PATRICK,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC17-246
_____

**ERIC KURT PATRICK,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[June 14, 2018]
**[CORRECTED OPINION]**

PER CURIAM.

Eric Kurt Patrick, a prisoner under sentence of death, appeals an order

denying his motion for postconviction relief filed under Florida Rule of Criminal

Procedure 3.851. Patrick also petitions this Court for a writ of habeas corpus. We

have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const. For the reasons that

follow, we affirm in part and reverse in part the postconviction court's denial of

Patrick's postconviction motion and remand for an evidentiary hearing on one

claim. We grant Patrick's petition for writ of habeas corpus, which raises a valid

claim under *Hurst v. Florida*, 136 S. Ct. 616 (2016), and *Hurst v. State* (*Hurst*),

202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017).

## I. BACKGROUND

In 2009, Patrick was convicted of the kidnapping, robbery, and first-degree

murder of Steven Schumacher. *Patrick v. State*, 104 So. 3d 1046, 1054 (Fla.

2012). On direct appeal, we affirmed his convictions and sentences, including a

sentence of death for the murder, and summarized the guilt-phase evidence as

follows:

> Eric Kurt Patrick was recently released from prison and
> homeless when he met Steven Schumacher at Holiday Park during a
> rain shower when both men took shelter under a pavilion.
> Schumacher invited Patrick to lunch, then to stay with him at his
> home until Patrick was back on his feet. On the night of Sunday,
> September 25, 2005, Patrick beat Schumacher to death. Patrick left
> Schumacher's apartment and took Schumacher's truck and parked it
> at the Tri–Rail station. Patrick withdrew approximately $900 from
> Schumacher's bank account using his ATM card in three separate
> transactions. Patrick was arrested after a separate, unrelated
> encounter with Deputy Kurt Bukata. Patrick [later] confessed to
> beating Schumacher, stated that he was afraid Schumacher was dead,
> and that he didn't mean to kill him.
> . . . .

- 2 -

On the night of the murder, Patrick and Schumacher drank beers and went to bed. Patrick gave Schumacher a massage, then they both lay naked in bed. According to Patrick, Schumacher attempted anal sex, which Patrick refused. Patrick stated that Schumacher was "riding up on [him] squeezing [him]." After Patrick told him to stop, Schumacher stopped but tried again later. Patrick then explained that he "cut loose on [Schumacher]."

Patrick admitted and the evidence verified that Patrick beat Schumacher in the bedroom, beginning in the bed. He began hitting Schumacher with his fists but also beat him with a wooden box because his hands hurt so badly. Schumacher's nose was broken and his face was cut. He was hit so hard that his teeth were broken. Patrick then tied up Schumacher using a telephone cord at the base of the bed, then taped his mouth when Schumacher yelled for help. Patrick did not want Schumacher "to go to the law" on him. Patrick put Schumacher in the bathtub on his side where Schumacher was later found dead.

Jenny Scott and Robert Lyon, Schumacher's friends, usually saw him daily. They last saw Schumacher on [Sunday,] September 25, 2005 . . . . Scott did not hear from Schumacher [after that time,] and she also noticed his truck was missing. When Scott went to check on Schumacher on Tuesday, he did not answer so she called the Sheriff's Department.

Deputy James Snell responded to Scott's call. They both went into the apartment and saw that the bedroom was dark and disarrayed. Both Deputy Snell and Scott saw blood stains throughout the room. At that point, Scott ran out of the apartment. Deputy Snell found Schumacher's body in the bathtub. The body was very bloody and the hands and ankles were bound in the back; the head and face were taped, with the face resting on the drain. The pants were pulled down although still on the body. The body was cold and stiff and the blood had pooled. The ankles were bound with torn sheets and a knotted lamp cord. The wrists were bound by a telephone cord and tape. There was bruising on an elbow, the chin, and the top of the head. The tape on the head went both horizontally and vertically and there was a pillow case folded over the mouth under the tape. The tape seemed to be one continuous piece. Deputy Snell informed Scott that Schumacher was dead. Scott then provided the police with a description of Patrick.

The deputies found no evidence of forced entry into the apartment. Additionally, they discovered that the air conditioning was set at sixty degrees so all the windows had condensation on them. In the kitchen trash, the deputies found tape matching that used on Schumacher's face. Schumacher's wallet was in the living room. There were bloody footprints on the tile, a large blood stain on the bedroom carpet, and blood spatter on the dresser and wall. The bedroom lamp was cracked and missing its cord. A cord was in the bed under the sheets. There was blood spatter on the sheets and headboard. Teeth were found in the bedclothes. A broken box with blood on it was under the dresser.

Deputy Kurt Bukata ran into Patrick at a gas station and arrested him on an outstanding warrant. Patrick had injuries on his knuckles and was carrying a duffel bag. Patrick also had some abrasions on his upper body. Bukata inventoried the duffel bag and found blood-stained boots, jeans, briefs, and socks. . . . DNA tests identified Schumacher's blood on Patrick's jeans.

*Id*. at 1053-54.

Patrick's jury recommended a death sentence by a vote of seven to five. The trial court followed the jury's recommendation, finding seven aggravators[1] and sixteen nonstatutory mitigating circumstances.[2] On appeal, this Court struck one

---

1. The aggravators the trial court found were the following: (1) Patrick was under a sentence of imprisonment (great weight); (2) Patrick had a prior violent felony (great weight); (3) the murder occurred in the course of a felony, specifically robbery or kidnapping (great weight); (4) pecuniary gain (merged with the in the course of a felony aggravator); (5) the murder was especially heinous, atrocious, or cruel (great weight); (6) the murder was cold, calculated, and premeditated (great weight); and (7) the victim was particularly vulnerable due to advanced age (seventy-two) or disability (great weight).

2. The mitigating circumstances found were the following: (1) Patrick's father was physically and mentally abusive (little weight); (2) Patrick had a tragic youth (little weight); (3) his childhood was unstable (little weight); (4) there was family abuse (some weight); (5) substance abuse from an early age (little weight);

- 4 -

aggravator (cold, calculated, and premeditated) but affirmed the death sentence, finding the consideration of this aggravator harmless error. *Id*. at 1055, 1068. Patrick's death sentence became final in 2013. *Patrick v. Florida*, 571 U.S. 839 (2013).

Thereafter, Patrick timely filed his initial motion for postconviction relief under Florida Rule of Criminal Procedure 3.851, followed by a corrected motion, raising seven claims with subparts.[3] Patrick later sought leave to amend his rule

---

(6) Patrick suffered from severe drug abuse at the time of the crime (some weight); (7) Patrick sought absolution and forgiveness (little weight); (8) Patrick had remorse (some weight); (9) he loves his family (little weight); (10) Patrick is close to his mother (some weight); (11) his brother attended the trial (little weight); (12) Patrick confessed (little weight); (13) he had good conduct throughout the trial (little weight); (14) he suffered from emotional stress combined with a history of family dysfunction (little weight); (15) he had experienced childhood sexual abuse and exploitation (some weight); and (16) he had some mental health history as discussed in number 14 (little weight). *Patrick*, 104 So. 3d at 1055 n.2.

     3. Patrick raised the following claims in his corrected rule 3.851 motion: (1) application of the one-year time limit of rule 3.851 to Patrick's case violates his rights to due process and equal protection; (2) section 27.7081, Florida Statutes (2014), and Florida Rule of Criminal Procedure 3.852 are unconstitutional both facially and as applied because public records in the possession of state agencies have been withheld; (3) Patrick is being denied various constitutional rights because of the rules prohibiting his attorneys from interviewing jurors to determine the extent to which constitutional error is present; (4.1) trial counsel was ineffective for failing to properly challenge Patrick's waiver of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and the voluntariness of his confession; (4.2) trial counsel was ineffective for failing to raise a challenge to the shoeprint evidence under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); (4.3) the State failed to disclose that much of the testimony of Martin Diez was false and coerced; (4.4) the cumulative effect of counsel's ineffective assistance, prosecutorial misconduct, and the other errors in this case entitles Patrick to a new trial; (5) trial

3.851 motion to add a *Hurst v. Florida* claim. The postconviction court accepted the amendment and, after an evidentiary hearing on certain claims, denied the motion in its entirety. As to the *Hurst v. Florida* claim, the postconviction court noted that this Court had not yet determined whether the holding in that case would have retroactive effect and denied the claim without prejudice to Patrick's filing a future motion on the same grounds once this Court resolved the retroactivity issue in then-pending cases.

Patrick appealed the denial of his rule 3.851 motion and filed a petition for writ of habeas corpus with this Court, requesting relief under *Hurst v. Florida* and *Hurst*. In his appeal, Patrick argues that the postconviction court erred with respect to the following claims: (1) that he is entitled to a new penalty phase under *Hurst v. Florida*; (2) that trial counsel was ineffective for failing to contest Patrick's *Miranda* waiver and the voluntariness of his confession; (3) that trial counsel was ineffective for failing to raise a *Frye* challenge to shoeprint evidence or otherwise contest its credibility; (4) that trial counsel was ineffective for failing to investigate and present certain mitigation evidence at Patrick's penalty phase; and (5) that trial

---

counsel was ineffective in failing to investigate and present available mitigation evidence; (6) section 922.105, Florida Statutes (2014), and Florida's existing procedure for lethal injection violate article II, section 3 and article I, sections 9 and 17 of the Florida Constitution and the Eighth Amendment of the United States Constitution, both as applied and facially; and (7) trial counsel was ineffective for failing to adequately question or challenge two jurors.

counsel was ineffective for failing to adequately question or challenge two jurors during voir dire. We find no reversible error in the postconviction court's procedural ruling that Patrick's *Hurst v. Florida* claim was premature, as it was presented to the postconviction court before this Court decided the retroactivity of that decision and *Hurst* in *Mosley v. State*, 209 So. 3d 1248, 1276 (Fla. 2016). However, as explained below, we grant Patrick a new penalty phase under *Hurst v. Florida* and *Hurst* in accordance with his petition for writ of habeas corpus. Because Patrick is entitled to a new penalty phase as argued in his petition for writ of habeas corpus, the other penalty-phase claim raised before the postconviction court is moot and need not be addressed. We address each of the remaining claims in turn.

## II. POSTCONVICTION APPEAL

Each of the non-*Hurst* claims at issue on appeal alleges ineffective assistance of trial counsel. Some of these claims were denied after an evidentiary hearing and some summarily. We review the summarily denied claims de novo, accepting their allegations as true to the extent they are not conclusively refuted by the record and reversing for an evidentiary hearing if they are facially sufficient to show entitlement to relief and raise an issue of fact. *Ault v. State*, 213 So. 3d 670, 677-78 (Fla. 2017). As to the claims denied after an evidentiary hearing, we "defer to the postconviction court's factual findings as long as they are supported by

competent, substantial evidence in the record" and review the postconviction

court's legal conclusions de novo. *Seibert v. State*, 64 So. 3d 67, 78 (Fla. 2010).

Substantively, each ineffective assistance of counsel claim required Patrick

to show the following, in accordance with *Strickland v. Washington*, 466 U.S. 668

(1984):

> First, the claimant must identify particular acts or omissions of the
> lawyer that are shown to be outside the broad range of reasonably
> competent performance under prevailing professional standards.
> Second, the clear, substantial deficiency shown must further be
> demonstrated to have so affected the fairness and reliability of the
> proceeding that confidence in the outcome is undermined.

*Abdool v. State*, 220 So. 3d 1106, 1111 (Fla. 2017) (quoting *Bolin v. State*, 41 So.

3d 151, 155 (Fla. 2010)). These two prongs of the ineffective assistance of counsel

test present mixed questions of law and fact, *Sochor v. State*, 883 So. 2d 766, 771

(Fla. 2004) (citing *Strickland*, 466 U.S. at 698)), but the ultimate conclusions on

both prongs are matters of law, *Peterson v. State*, 221 So. 3d 571, 584 (Fla. 2017)

(quoting *Everett v. State*, 54 So. 3d 464, 472 (Fla. 2010)).

## A. Confession

Patrick argues that the postconviction court erred in denying the claim that

his attorneys were ineffective for failing to consult a psychopharmacologist or

addictionologist for the purpose of challenging the validity of his *Miranda* waiver

and the voluntariness of his confession that followed. The motion would have

been based on the premise that Patrick was experiencing cocaine withdrawal,

- 8 -

which combined with his preexisting conditions of depression and post-traumatic stress disorder to render him unable to comprehend his rights sufficiently to waive them or have the mental capacity to withstand police coercion and speak voluntarily thereafter. Because counsel cannot be deficient for failing to file a meritless motion, *see Merck v. State*, 124 So. 3d 785, 800 (Fla. 2013), we affirm the postconviction court's denial of this claim.

The confession at issue was given during a video-recorded custodial interrogation after Patrick was read his *Miranda* rights, said he understood them, agreed to waive them, and signed a waiver form. To establish that the proposed motion would have been successful, Patrick presented the postconviction court with the video of the interrogation and the testimony of Dr. William Morton, a psychopharmacologist. After considering the video and Dr. Morton's testimony, the postconviction court made the following significant finding:

> While, arguably, an expert could point out the subtleties that would show withdrawal, that is exactly what they would have been in this case. In other words, there was no glaring behavior that would have led a reasonable judge or jury to believe that [Patrick] was under the influence of any drugs or alcohol or manifesting any drug withdrawal symptoms.

The court also stated that it noted no signs of impairment and that Patrick's answers to the detective's questions were relevant and responsive. Patrick argues that the lack of "glaring behavior" does not invalidate his claim but proves the need for expert testimony. Consistent with this position, Dr. Morton testified that

he was able to detect nuances that would not be observed by the average lay person. Even so, the essential point of the postconviction court's finding—that the video belies Patrick's claim, even after consideration of his expert's testimony—remains valid.

Indeed, while tired and distressed concerning his crimes, Patrick seemed intelligent, reflective, and engaged during the interview, even drawing a map for the interviewing officer to show where he left the victim's keys, while providing detailed instructions. Moreover, although Dr. Morton indicated that Patrick would have been experiencing a significant level of physical and emotional discomfort from drug withdrawal, he did not testify that Patrick was incapable of understanding the *Miranda* rights and the consequences of waiving them, and he found that Patrick's withdrawal symptoms were only "mild to moderate." Also, although Dr. Morton opined that Patrick showed "confusion" and "some episodes of slow thinking," Patrick made direct comments during the interview indicating that he understood the likely consequences of his statements. This evidence supports the postconviction court's findings and leads us to conclude that Patrick gave his statements with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," such that his *Miranda* waiver was valid. *Ramirez v. State*, 739 So. 2d 568, 575 (Fla. 1999) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Accordingly, a motion to

suppress challenging the validity of Patrick's *Miranda* waiver would have been unsuccessful. *Cf. Buzia v. State*, 82 So. 3d 784, 793 (Fla. 2011); *Orme v. State*, 677 So. 2d 258, 262-63 (Fla. 1996).

Likewise, Patrick could not have succeeded on a motion to suppress his confession due to his experience of withdrawal symptoms during the questioning itself, as this component of the motion would have relied on his subjective mental state, not any specific examples of external pressure from the police beyond the inherent pressure of a custodial interrogation. *See Colorado v. Connelly*, 479 U.S. 157, 165 (1986) ("[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry."); *Thomas v. State*, 456 So. 2d 454, 458 (Fla. 1984); *see also Rigterink v. State*, 193 So. 3d 846, 865 (Fla. 2016).

For these reasons, we affirm the postconviction court's denial of this claim.

**B. Shoeprint Evidence**

Patrick also argues that the postconviction court erred in summarily denying his claim that counsel was ineffective for failing to request a *Frye* hearing concerning expert testimony that the boots found in his duffel bag matched bloody shoeprints at the scene, or to challenge the credibility of that evidence. This claim was based on articles indicating that the FBI has questioned the validity of shoeprint identifications. At trial, Patrick's counsel advised the court that he did

not raise a *Frye* challenge to this evidence because, "candidly, there [was] so much other evidence" and the defense was not contesting that Patrick was at the murder scene. He also noted that he probably would not cross-examine the State's expert about the new studies because he did not find them "anywhere near important enough."

At the time of Patrick's trial, "new or novel scientific evidence" was admissible in Florida trials only when it passed the test set forth in *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923).[4] We have previously rejected a claim that shoeprint evidence is "new or novel." *Ibar v. State*, 938 So. 2d 451, 467-68 (Fla. 2006). Thus, the postconviction court properly ruled that if a *Frye* hearing had been requested, it would have been denied.

Whether counsel was ineffective for failing to cross-examine the State's expert concerning the validity of shoeprint identification is a separate question. This Court has explained that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Darling v. State*, 966 So. 2d 366, 382 (Fla. 2007) (quoting *Howell v. State*, 877 So.

_____

4. The Florida Legislature has since amended the Evidence Code to replace the *Frye* test with the test of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). We have declined to adopt that test to the extent it is procedural. *In re Amends to the Fla. Evid. Code*, 210 So. 3d 1231, 1238-39 (Fla. 2017).

2d 697, 703 (Fla. 2004)). A decision that lodging a particular challenge to the validity of evidence would be a waste of resources in light of counsel's knowledge of corroborating facts can be a reasonable strategic decision. *Id.* Here, the record establishes that counsel made a decision not to explore defects in shoeprint identification in part because he had chosen as a matter of strategy, and consistently with Patrick's confession and other evidence, to admit Patrick's presence at the scene. Accordingly, the record establishes that counsel's decision was a reasonable strategic one and, therefore, not deficient. *See id.* Moreover, given the concession both in defense argument and in Patrick's confession that Patrick was at the scene, there is no reasonable probability that a successful challenge to the validity of shoeprint comparison as a field would have affected the outcome of Patrick's trial. In other words, our confidence in the outcome is not undermined. Thus, we affirm the postconviction court's denial of this claim.

## C. Jurors

In the last of the appellate issues that we address, Patrick argues that the postconviction court erred in summarily denying the claim that counsel was ineffective for failing to challenge or adequately question two jurors concerning alleged biases. We address this claim as to only one of the jurors, as the claim concerning the other juror relates to the penalty phase, and we have determined

that the penalty-phase claims are moot.[5]  In pertinent part, Patrick claims that his trial counsel was ineffective for failing to challenge a juror who was biased against him based on his drug use and participation in sexual acts with the male victim. We affirm the denial of this claim except as it relates to statements this juror made regarding the effect evidence of homosexuality would have on his deliberations. For the reasons explained below, we reverse and remand for an evidentiary hearing on that aspect of the claim.

A valid claim of ineffective assistance of counsel for failing to challenge a juror must demonstrate that "one who was actually biased against the defendant sat as a juror," meaning that the juror had a "bias-in-fact that would prevent service as an impartial juror." *Carratelli v. State*, 961 So. 2d 312, 323-24 (Fla. 2007).  The evidence of the juror's actual bias must amount to "something more than mere doubt about that juror's impartiality." *Mosley*, 209 So. 3d at 1265.  Otherwise, the defendant cannot show prejudice. *Carratelli*, 961 So. 2d at 324.  Our cases

---

5. Assuming *arguendo* that Patrick's claim that he was denied a fair trial because of the other juror's views concerning the death penalty extends to how the juror's views would have affected his guilt-phase deliberations, we note that the denial of the claim was proper.  Patrick argues that this juror indicated a strong predisposition for recommending the death penalty by declaring that he leaned toward the death penalty at a level of "eight or nine" on a scale of one to ten. However, this juror later said that he was "[r]ight in the middle" concerning the death penalty, would "go by the law," and would have to "hear everything."  His comments do not show actual bias. *Cf. Guardado v. State*, 176 So. 3d 886, 899 (Fla. 2015).

addressing such claims tend to focus on this prong of the *Strickland* test, as it is necessary to establish that the juror was actually biased before proving that counsel performed deficiently by failing to challenge that juror due to bias. *See, e.g.*, *Hall v. State*, 212 So. 3d 1001, 1016 (Fla. 2017); *State v. Bright*, 200 So. 3d 710, 742 (Fla. 2016). Accordingly, our analysis of this issue begins with the prejudice prong.

The juror at issue said that he would give a witness's testimony less weight or credence if the witness was on drugs at the time that he observed the things about which he testified. These comments do not show bias, but rather reflect the reality of the effect that drug use can have on a person's ability to see, understand, and remember events. *See Trease v. State*, 768 So. 2d 1050, 1054 (Fla. 2000) (quoting *Edwards v. State*, 548 So. 2d 656, 658 (Fla. 1989) (describing the circumstances under which evidence of a witness's drug use is relevant for impeachment purposes)). Therefore, this aspect of the claim was properly denied.

In contrast, the juror showed actual bias stemming from Patrick's sexual activity. He said that he "would have a bias if [he] knew the perpetrator was homosexual." When asked if he would still hold the prosecutor to the proper burden of proof, he answered, "Put it this way, if I felt the person was a homosexual, I personally believe that person is morally depraved enough that he

might lie, might steal, might kill." The juror said "yes" when asked if this bias might affect his deliberations.

The State contends that this juror's bias was not against the defense, as there was no evidence that Patrick was homosexual, and instead suggested more bias against the victim. However, the evidence and arguments at trial indicated that, while Patrick denied being homosexual, he willingly participated in sexual and intimate acts with the male victim before the encounter in question and that he had engaged in similar activity in the past with other men.[6] Applying this evidence to the juror's voir dire answers establishes that, by the juror's own acknowledgement on the record, he was predisposed to believe that Patrick is morally depraved enough to have committed the charged offenses. Although Patrick does not identify as homosexual and indicated in his confession that his sexual activity with men was for material support rather than personal fulfillment, these points do not eliminate the bias that this juror said he would feel based on the evidence that trial counsel and the trial court knew the jury would hear during trial. Also, the fact that the juror's bias would have extended to the victim does not refute the bias he acknowledged or render him impartial.

---

6. Patrick's counsel was aware that this evidence would be presented at trial, as it was part of his confession, and Patrick's counsel acknowledged at a sidebar before the voir dire questioning at issue that there would be evidence of "[h]omosexual acts."

Because the juror's voir dire answers concerning homosexuality meet the *Carratelli* test for prejudice, the validity of the summary denial of this claim depends on the performance prong. Failure to raise a meritorious issue is not deficient performance when it results from the exercise of professional judgment after considering alternative courses. *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). As the State argues, the record in this case suggests possible strategic grounds, relating to both phases of the trial, for not striking this juror. We need not detail these grounds but note that when applying *Strickland*, "[g]enerally, an evidentiary hearing is required to conclude that action or inaction was a strategic decision." *Pineda v. State*, 805 So. 2d 116, 117 (Fla. 4th DCA 2002). On this record, we can neither ignore the possibility that counsel's failure to challenge this juror was strategic nor conclude that it was. Therefore, we reverse the postconviction court's denial of this claim and remand for an evidentiary hearing.

### III. PETITION FOR WRIT OF HABEAS CORPUS

While Patrick's postconviction motion was pending before the circuit court, the United States Supreme Court issued its decision in *Hurst v. Florida*, in which it held that Florida's former capital sentencing scheme violated the Sixth Amendment because it "required the judge to hold a separate hearing and determine whether sufficient aggravating circumstances existed to justify imposing the death penalty" even though "[t]he Sixth Amendment requires a jury, not a

judge, to find each fact necessary to impose a sentence of death." *Hurst v. Florida*, 136 S. Ct. at 619. On remand from this decision, we reached the following holding:

> [B]efore the trial judge may consider imposing a sentence of death, the jury in a capital case must unanimously and expressly find all the aggravating factors that were proven beyond a reasonable doubt, unanimously find that the aggravating factors are sufficient to impose death, unanimously find that the aggravating factors outweigh the mitigating circumstances, and unanimously recommend a sentence of death.

*Hurst*, 202 So. 3d at 57.

We have held that *Hurst* applies retroactively to "defendants whose sentences became final after the United States Supreme Court issued its opinion in *Ring*[ *v. Arizona*, 536 U.S. 584 (2002)]." *Mosley*, 209 So. 3d at 1276. Because Patrick's death sentence became final in 2013, *Hurst* applies retroactively to him. *See id*. And because the jury recommended the death penalty by a vote of seven to five, Patrick's death sentence violates *Hurst*. *See Kopsho v. State*, 209 So. 3d 568, 570 (Fla. 2017).

Accordingly, we must consider whether the error is harmless beyond a reasonable doubt:

> The harmless error test, as set forth in *Chapman*[*v. California*, 386 U.S. 18 (1967),] and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.

- 18 -

*Hurst*, 202 So. 3d at 68 (quoting *State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986)). While at least three of the aggravators in this case are such that no reasonable juror would have failed to find their existence,[7] based on the jury's seven-to-five recommendation for a sentence of death, we cannot determine that the jury unanimously found that the aggravating factors were sufficient to impose a sentence of death. Nor can we "determine that the jury unanimously found that the aggravators outweighed the mitigation." *Kopsho*, 209 So. 3d at 570. "We can only determine that the jury did not unanimously recommend a sentence of death." *Id.* Therefore, because we cannot say that there is no reasonable possibility that the error contributed to the sentence, the *Hurst* error in Patrick's sentencing was not harmless beyond a reasonable doubt. *Cf. id.*

Accordingly, the petition for writ of habeas corpus is hereby granted. We vacate the death sentence and remand to the circuit court for a new penalty phase. *See Hurst*, 202 So. 3d at 69.

## IV. CONCLUSION

For the foregoing reasons, we affirm the denial of postconviction relief except as to the ineffective assistance of counsel claim concerning juror bias on the

---

7. Specifically, no reasonable juror would have failed to find that Patrick was under a sentence of imprisonment, that he had a prior violent felony, or, in light of the guilt-phase verdict, that the murder occurred in the course of a felony.

basis of homosexuality, and we grant Patrick's petition for writ of habeas corpus. Accordingly, we reverse the denial of the postconviction claim concerning juror bias and remand for an evidentiary hearing. We also vacate Patrick's death sentence and instruct the circuit court to hold a new penalty phase in the event that Patrick's conviction for first-degree murder is confirmed after the rule 3.851 motion at issue in this appeal is finally resolved at both the circuit court level and this level.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, and LAWSON, JJ., concur.
POLSTON, J., concurs in part and dissents in part with an opinion, in which
CANADY, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND,
IF FILED, DETERMINED.

POLSTON, J., concurring in part and dissenting in part.

I concur with the majority's decision to affirm in part and reverse in part the postconviction court's denial of Patrick's postconviction motion and to remand for an evidentiary hearing on one claim. I dissent as to its grant of Patrick's petition for writ of habeas corpus and vacating of the death sentence pursuant to *Hurst*. *See Mosley v. State*, 209 So. 3d 1248, 1285 (Fla. 2016) (Canady, J., dissenting on retroactivity of *Hurst*). I would also affirm the denial of Patrick's other penalty phase claims.

CANADY, J., concurs.

- 20 -

An Appeal from the Circuit Court in and for Broward County,
     Ilona M. Holmes, Judge - Case No. 062005CF016477A88810
And An Original Proceeding – Habeas Corpus

Neal A. Dupree, Capital Collateral Regional Counsel, and Suzanne Myers Keffer, Chief Assistant Capital Collateral Regional Counsel, Southern Region, Fort Lauderdale, Florida,

     for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Lisa-Marie Lerner and Ilana Mitzner, Assistant Attorneys General, West Palm Beach, Florida,

     for Appellee/Respondent

Billy H. Nolas, Chief, Capital Habeas Unit, Office of the Federal Public Defender, Tallahassee, Florida,

     Amicus Curiae The Capital Habeas Unit of the Office of the Federal Public Defender for the Northern District of Florida