# Supreme Court of Florida

_____

No. SC18-42
_____

**DELMER SMITH,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

March 5, 2020

PER CURIAM.

Delmer Smith challenges an amended order denying his motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons set forth below, we affirm the postconviction court's order.

## FACTS AND PROCEDURAL BACKGROUND

On direct appeal, we described the following facts pertinent to this case:

> On the afternoon of August 3, 2009, Kathleen Briles was accosted outside of her home in Manatee County, after returning from grocery shopping. Briles was then dragged inside her home, where she was bound, gagged, and beaten to death with her own antique twenty-three-pound cast iron sewing machine. Numerous items were stolen from the home.

The victim's husband, Dr. James Briles, returned home at about 7:30 p.m., after completing his rounds at the hospital, and found his deceased wife. When he first arrived, he noticed that his wife's car was not parked in its usual spot closest to their home and that all of the lights inside the home were off. After turning on the lights, he saw his wife lying facedown on the floor in front of the love seat, her ankles and hands bound with duct tape. The victim had a duct tape gag around her mouth, and she was lying in a pool of blood. Her left jaw and head were deformed, and the antique cast iron sewing machine was on the ground behind her head.

. . . Approximately $30,000–$40,000 worth of jewelry was missing, including the victim's wedding band and a diamond baguette necklace that Dr. Briles had purchased for his wife years before. Further, while the victim had been seen wearing a watch earlier that day, she was not wearing a watch when she was discovered. Dr. Briles identified many unique items that were missing from the house, including a rare set of nickels a patient had given him, an old medical encyclopedia that the victim purchased at a yard sale, and a pewter Minnie Mouse keychain produced by Hudson Creek–a company that went out of business years ago.

. . . .

On the day after the murder, Smith picked up a friend, James Cellecz, in his Chevy Blazer, and the two ran some errands together. Afterwards, they stopped at Pawn Stars, a pawn shop. Smith told Cellecz that he wanted to pawn some jewelry he had purchased from a friend but had forgotten his identification, so Smith asked Cellecz if Cellecz could pawn the items for him. One of the items was the diamond baguette necklace that was later identified as belonging to the victim. Cellecz agreed to pawn the items, and they both went into the store together. Cellecz obtained Smith's permission to accept the price he was offered by the pawn store clerk for the necklace. During this trip, Cellecz noticed that Smith had a medical encyclopedia on the floor of his vehicle, which Cellecz thought was odd because Smith did not have any knowledge of medicine.

. . . .

The State presented evidence to establish that [at] 3:44 p.m. on the day of the murder, Smith's cell phone was at a location close to where the murder took place–a fact that was established when Smith's cell phone received a call that went unanswered and records indicated that his cell phone used a cell tower that was 1.24 miles away from the victim's home. This timing was particularly striking because the victim had left Publix at 3:38 p.m. and lived only a few minutes away from the store. Cell phone records further demonstrated that both before and after this time, Smith's cell phone was located close to where Smith lived in Sarasota County.

*Smith v. State*, 170 So. 3d 745, 749-52 (Fla. 2015).

Following Smith's arrest, he called his girlfriend, Martha Tejeda, and asked her to pick up some duffle bags he had placed in storage, and to go through the bags and remove items. *Id.* at 751. Ms. Tejeda retrieved a red duffle bag from a storage shed and turned the bag over to the police. *Id.* Inside the bag, officers found many items matching the descriptions of items stolen from the victim's residence, including a Minnie Mouse keychain, a gold-colored lock, and a watch. *Id.* Police also found a medical encyclopedia inside a black trash bag. At the time of trial, it was believed that the trash bag had been inside the red duffle bag.

The jury convicted Smith of first-degree murder. *Id.* at 752. At Smith's penalty phase proceeding, the trial court held a *Spencer*[1] hearing. 170 So. 3d at 752.

The trial court found that five aggravating circumstances applied and assigned each the following weight: (1) Smith was on felony

1. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

- 3 -

probation (moderate weight even though the murder occurred less than a year from the date of Smith's release from prison); (2) Smith had prior violent felony convictions (great weight as to the 1991 state robbery conviction and the 1995 federal armed bank robbery convictions and noting that the court would also assign great weight to the Sarasota home invasion armed robbery conviction if that conviction was upheld on appeal); (3) the murder was committed in the course of a burglary (moderate weight); (4) the murder was committed for pecuniary gain (no weight because it merged with the committed-in-the-course-of-a-burglary aggravator); and (5) the murder was especially heinous, atrocious, or cruel (HAC) (great weight).

. . . .

The trial court [found] that five nonstatutory mitigating factors applied and assigned each the following weight: (1) intermittent explosive disorder (moderate weight); (2) loving relationship with nieces (little weight); (3) physical, emotional, and sexual abuse as a child (little weight); (4) acute academic failure and attention deficit disorder (significant weight); and (5) good conduct while in custody (moderate weight).

Based on these findings, and in accordance with the jury's unanimous recommendation, the trial court sentenced Smith to death.

*Id.* at 754. We affirmed Smith's conviction and death sentence. *Id.* at 766.

Smith filed an initial postconviction motion, raising several ineffective assistance of counsel claims,[2] as well as a claim alleging retroactive application of

---

2. (1) Failure to file a motion to suppress evidence obtained during a warrantless search of a bag; (2) failure to timely file and argue a motion to suppress evidence obtained in warrantless cell phone search; (3) failure to hire a cell phone expert to rebut the State's cell phone tracking evidence; (4) waiving the right to cross-examine witness James Cellecz; (5) failure to fully investigate mitigating circumstances for the penalty phase.

*Riley v. California*, 573 U.S. 373 (2014), and a claim based on *Hurst v. State*, 202 So. 3d 40 (Fla. 2016). One of Smith's ineffective assistance claims alleged that counsel should have moved to suppress evidence obtained during a warrantless search of the red duffle bag. The postconviction court denied relief following an evidentiary hearing.

Smith appealed the order denying relief, but after the parties filed their appellate briefs, the State learned that the police *did* obtain a warrant to search the red duffle bag, and that the black trash bag containing the medical encyclopedia was *not* found inside the duffle bag but had in fact been taken out of Smith's car by Ms. Tejeda and given directly to the investigating officers. The parties requested that this Court relinquish jurisdiction for a second evidentiary hearing, and we granted the request. At that evidentiary hearing, the detective in charge of Smith's investigation testified that the warrant included the trash bag, though the contents of the bag had already been removed for inventory purposes. Smith's trial counsel offered no strategic reason for not moving to suppress the contents of the bag.

After the second evidentiary hearing, Smith amended his claim to allege that counsel was ineffective by failing to move to suppress evidence obtained during a search of the black trash bag. The postconviction court entered an amended order denying relief on all claims. Smith now challenges that amended order.

## ANALYSIS

### I.   Smith's Ineffective Assistance of Counsel Claims

To prevail on a postconviction ineffective assistance of counsel claim, a defendant must identify specific acts or omissions by his attorney that were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The defendant bears the burden to 'overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *State v. Murray*, 262 So. 3d 26, 37 (Fla. 2018) (quoting *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955))). A defendant must also establish prejudice—that is, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

Smith's first argument in this appeal is that the postconviction court erred in denying his claim that defense counsel was ineffective by failing to file a motion to suppress evidence obtained during an allegedly illegal search. Testimony given at the second evidentiary hearing showed that Martha Tejeda, Smith's girlfriend, took a black trash bag out of Smith's car and turned it over to law enforcement officers. Inside that trash bag, officers found a medical encyclopedia, one of the items listed

as stolen from the victim's home.  Smith alleged that defense counsel should have moved to suppress that evidence because it was obtained during a purportedly warrantless search of the trash bag.  The postconviction court denied this claim, ruling that Ms. Tejeda had apparent authority to authorize the search.

We need not decide whether counsel's performance was deficient because Smith has not established prejudice.  *See Waterhouse v. State*, 792 So. 2d 1176, 1182 (Fla. 2001) (holding that when a defendant fails to make a showing on one prong of the *Strickland* test, it is not necessary to examine whether he made a showing on the other prong).  At trial, Smith's acquaintances testified that Smith had recently come into possession of jewelry, keys, a Minnie Mouse keychain, and a watch, all of which matched the descriptions of items stolen from the victim's home.  Mr. Cellecz testified that he saw a medical encyclopedia in Smith's car, which he found odd given that Smith had no medical background.  Thus, even if counsel had suppressed the evidence found in the trash bag or in the red duffel bag, the jury still would have heard that Smith had possession of many unique items stolen from the victim's home, including the medical encyclopedia.  Accordingly, counsel's alleged failure to file a motion to suppress does not demonstrate a reasonable probability of a different outcome.

Smith next argues that the postconviction court erred in denying his claim that counsel was ineffective for failing to timely file a motion to suppress evidence

obtained during a warrantless search of Smith's cell phone.  Smith concedes that such a motion to suppress would not have been granted under the case law controlling at the time of his trial.  *See Smallwood v. State*, 61 So. 3d 448, 459 (Fla. 1st DCA 2011) (*Smallwood I*).  However, he argues that counsel should have filed a motion anyway, to preserve the issue, given that this Court would later quash *Smallwood I* in *Smallwood v. State*, 113 So. 3d 724, 740 (Fla. 2013).

We affirm the court's denial of this claim because "counsel cannot be held ineffective for failing to anticipate changes in the law," *Cherry v. State*, 781 So. 2d 1040, 1053 (Fla. 2000), and "cannot be deficient for failing to file a meritless motion," *Patrick v. State*, 246 So. 3d 253, 260 (Fla. 2018).  Smith considered this, for he alleged in the alternative that counsel should have filed a motion for new trial as soon as this Court accepted review of *Smallwood I*.  However, Florida Rule of Criminal Procedure 3.600(a) provides that a court will grant a new trial "only if: (1) the jurors decided the verdict by lot; (2) the verdict is contrary to law or the weight of the evidence; or (3) new and material evidence . . . has been discovered." The grounds Smith proposed for counsel to file a motion for new trial—that there was a potential for existing case law to be overturned—are not a viable basis for a trial court to grant a new trial under rule 3.600(a).  A motion for new trial would have been denied on the grounds alleged, and defense counsel was therefore not

ineffective for failing to file such a motion. *See Johnston v. State*, 63 So. 3d 730, 739 (Fla. 2011).

Next, Smith argues that the postconviction court erred in denying his claim that counsel was ineffective for failing to hire an expert to rebut the State's cell phone tracking expert. At trial, the State presented evidence showing that at 3:44 p.m. on the day of the murder (the time when the victim was returning home from Publix), Smith's cell phone communicated with a cell tower that was just a mile from the victim's home. The State called numerous witnesses who testified that they either called Smith's phone number or received calls from his number, and none of the witnesses testified that they talked to anyone other than Smith. Smith alleged that an expert could have testified for the defense that there was actually no way to determine where Smith's cell phone was located at 3:44 p.m.

At the evidentiary hearing on this claim, Smith's trial counsel testified that he considered hiring an expert but decided that cross-examining the State's expert would be more effective. Smith's postconviction counsel offered testimony from a proposed expert, Robert Aguero, a self-employed cell-tower data analyst. Mr. Aguero testified that although the State's expert testified at trial that a cell tower's maximum range is only seven to eight miles, some cell towers have ranges of up to thirty miles. However, Mr. Aguero did not test the range of the specific cell tower that communicated with Smith's cell phone on the day of the murder, and he could

not say that this tower had a thirty-mile range. He said that the thirty-mile number was "just a maximum range that [towers] can potentially go to." Moreover, Mr. Aguero did not dispute the movement of Smith's phone on the day of the murder. In fact, he admitted that his mapping of Smith's movement on the day of the murder was consistent with the testimony presented by the State at trial.

The postconviction court found that Smith's trial counsel made a reasonable strategic decision to rely on cross-examination, considering that Mr. Aguero could not refute the evidence of Smith's phone traveling in a manner consistent with the State's version of events. Based on the testimony elicited at the evidentiary hearing, we agree that counsel's failure to hire an expert was a strategic decision, given that a defense expert would have had to concede to the State's general mapping of Smith's cell phone location on the day of the murder. *See Brown v. State*, 846 So. 2d 1114, 1125 (Fla. 2003) ("[T]his Court will not second-guess counsel's strategic decisions on collateral attack.").

Smith's next argument is that the postconviction court erred in denying his claim that penalty phase counsel was ineffective for failing to fully investigate mitigating sentencing factors. Smith alleged that counsel failed to interview family members who witnessed abuse Smith suffered as a child. At the evidentiary hearing on this claim, Dr. Hyman Eisenstein testified that he was hired as a penalty phase witness about a month before Smith's trial and had concluded that Smith had

brain damage, intermittent explosive disorder, high impulsivity, and an IQ in the low-average range. Dr. Eisenstein testified that when he interviewed Smith's siblings during the postconviction process, he learned that Smith was regularly beaten by his parents. Some of Smith's family members substantiated this abuse at the evidentiary hearing. Dr. Eisenstein opined that if he had known this information at the time of Smith's trial, he would have had a better understanding relevant to diagnosis. He diagnosed Smith with two previously undiagnosed disorders: posttraumatic stress disorder and borderline personality disorder.

The postconviction court found that "any arguable shortcomings of the penalty phase of Mr. Smith's trial arose mainly from [Smith's] strict instructions to counsel not to speak to his family members," and that Smith's "own lack of cooperation in preparing for the penalty phase undermines his present allegations of ineffective assistance of counsel." The postconviction court also found that additional mitigation testimony would not have resulted in a different outcome, given the weighty aggravating circumstances found at sentencing. We agree.

Smith relies on *State v. Lewis*, 838 So. 2d 1102 (Fla. 2002), for the proposition that an attorney must conduct a thorough investigation and preparation of mitigation evidence before a defendant can knowingly and intelligently waive mitigation evidence. *See id.* at 1113 ("Although a defendant may waive mitigation, he cannot do so blindly; counsel must first investigate all avenues and

advise the defendant so that the defendant reasonably understands what is being waived and its ramifications and hence is able to make an informed, intelligent decision."). But the attorney in *Lewis* spent "very little time readying for the penalty phase proceedings," *id.* at 1109, and that lack of effort damaged the defense team's relationship with Lewis's family members, who grew uncooperative, which is what led the defendant to waive mitigation. *Id.* at 1109-10.

Here, unlike in *Lewis*, it was Smith and his own family, not defense counsel, who hampered the mitigation investigation. Defense counsel testified at the evidentiary hearing that despite Smith's objections, a mitigation specialist was hired to contact Smith's family members, and that Smith objected *again* after learning the specialist had spoken to his family. At that point, Smith's family members, including a sister who had previously been cooperative, stopped returning phone calls from the defense team. Considering Smith's limitations on and interference with counsel's penalty phase investigation, we hold that the alleged failures on the part of defense counsel do not rise to ineffective assistance of counsel. *See Brown v. State*, 894 So. 2d 137, 146 (Fla. 2004).

## II.    Smith's *Riley v. California* Claim

Next, Smith argues that he is entitled to a new trial under *Riley*, 573 U.S. at 403, in which the United States Supreme Court held that law enforcement officers

must generally obtain a warrant before searching a person's cell phone, even when the cell phone is seized incident to arrest. Smith argues that *Riley* applies to his case because his direct appeal was pending when *Riley* was decided. We need not determine whether *Riley* applies to Smith's case or whether the search of Smith's cell phone was illegal, for Smith's claim is procedurally barred because he failed to raise this issue on direct appeal. *See Johnson v. State*, 104 So. 3d 1010, 1027 (Fla. 2012) ("Claims that should have been raised on direct appeal are procedurally barred from being raised in collateral proceedings"); *Garcia v. State*, 622 So. 2d 1325, 1326-27 (Fla. 1993) (observing that a procedural bar applies to claims that could have been argued on direct appeal if preserved).

There is no dispute that Smith failed to raise this claim on direct appeal. Accordingly, Smith's claim is procedurally barred.

### III.  Smith's *Hurst v. State* Claim

Smith challenges the legality of his sentence based on purported violations of *Hurst v. State*, where this Court held that

> before the trial judge may consider imposing a sentence of death, the jury in a capital case must unanimously and expressly find all the aggravating factors that were proven beyond a reasonable doubt, unanimously find that the aggravating factors are sufficient to impose death, unanimously find that the aggravating factors outweigh the mitigating circumstances, and unanimously recommend a sentence of death.

202 So. 3d at 57. We have since receded from *Hurst v. State*, "except to the extent it requires a jury unanimously to find the existence of a statutory aggravating circumstance beyond a reasonable doubt." *State v. Poole*, 45 Fla. L Weekly S41, S48 (Fla. Jan. 23, 2020).

Smith's statutory aggravators included the aggravating circumstance of the defendant having a previous conviction of a felony involving the use or threat of violence. The State introduced certified copies of Smith's previous convictions for armed bank robbery, robbery, armed home invasion, and armed kidnapping. The existence of previous violent felonies was an aggravating circumstance that rendered Smith eligible for the death penalty and satisfied the mandates of the United States and Florida Constitutions. *See Poole*, 45 Fla. L Weekly at S48; *Johnston v. State*, 863 So. 2d 271, 286 (Fla. 2003) ("This prior violent felony conviction alone satisfies constitutional mandates because the conviction was heard by a jury and determined beyond a reasonable doubt."). We therefore affirm the denial of relief on this claim.

## CONCLUSION

Because the postconviction court properly denied all claims argued in this appeal, we affirm the amended order denying postconviction relief.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, and MUÑIZ, JJ., concur.
LABARGA, J., concurs in result only with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., concurring in result only.

Because the majority relies on *State v. Poole*, 45 Fla. L. Weekly S41 (Fla. Jan. 23, 2020), a wrongfully decided opinion to which I strenuously dissented, I can concur only in the result.

An Appeal from the Circuit Court in and for Manatee County,
    Diana Lee Moreland, Judge - Case No. 412010CF000479CFAXMA

Eric C. Pinkard, Capital Collateral Regional Counsel, and Rachel Paige Roebuck, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, Timothy A. Freeland, Senior Assistant Attorney General, and Christina Z. Pacheco, Assistant Attorney General, Tampa, Florida,

    for Appellee