# Supreme Court of Florida

No. SC20-108

**LUCIOUS BOYD,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

May 13, 2021

PER CURIAM.

This case is before the Court on appeal from an order summarily denying Lucious Boyd's second successive motion to vacate his judgment of conviction of first-degree murder and sentence of death under Florida Rule of Criminal Procedure 3.851. Because the order concerns postconviction relief from a capital conviction for which a sentence of death was imposed, this Court has jurisdiction of the appeal under article V, section 3(b)(1), of the Florida Constitution.  For the reasons below, we affirm.

# I. BACKGROUND

Boyd was convicted of first-degree murder, armed kidnapping, and sexual battery for offenses that occurred in 1998. *Boyd v. State* (*Boyd I*), 910 So. 2d 167, 174 (Fla. 2005), *cert. denied*, 546 U.S. 1179 (2006). He was sentenced to death for the murder, and this Court affirmed his convictions and sentences on direct appeal. *Id.* Since then, we have affirmed the denial of Boyd's initial motion for postconviction relief and denied his petition for writ of habeas corpus, *Boyd v. State* (*Boyd II*), 200 So. 3d 685, 690 (Fla. 2015), denied a second petition for writ of habeas corpus, *Boyd v. Jones (Boyd III)*, No. SC16-1812, 2017 WL 318931, at *1 (Fla. Jan. 23, 2017), and affirmed the summary denial of Boyd's first successive motion for postconviction relief, *Boyd v. State (Boyd IV)*, 291 So. 3d 900, 901 (Fla. 2020). Boyd now appeals the summary denial of his second successive motion for postconviction relief, in which he asserted a claim of juror misconduct on the part of Tonja Striggles.

According to the allegations of Boyd's motion, Boyd discovered the basis for his present claim at a federal evidentiary hearing on a separate claim of misconduct involving the same juror. At the federal hearing, which was convened to address a claim that juror

Striggles failed to reveal the full extent of her criminal history during voir dire,[1] juror Striggles volunteered information about three topics pertinent to the present claim: (1) a familial connection she has to Boyd, (2) pretrial knowledge of the case, and (3) the side effects of medication she was taking at the time of Boyd's trial. Boyd contends that juror Striggles's failure to reveal this information during voir dire amounts to juror misconduct and entitles him to a new trial.

The familial connection at issue is the marriage of juror Striggles's first cousin to Boyd's brother. Juror Striggles's testimony at the federal evidentiary hearing indicates that she learned about this relationship during a break in voir dire when she called her mother and revealed that she was being considered for jury service for a case involving Lucious Boyd. Before the first break, the entire panel had been asked if anyone knew Boyd or recognized his name in connection with a "criminal setting." At that

---

1. We addressed the same claim in *Boyd II* and denied relief. *Boyd II*, 200 So. 3d at 694-98. After an evidentiary hearing, the federal district court also denied relief but granted Boyd a certificate of appealability. *Boyd v. Inch*, No. 16-62555-Civ-Gayles, 2019 WL 3002922, at *13-*21, *42 (S.D. Fla. July 10, 2019).

time, juror Striggles said, "I have heard my family talk about it. I don't know if it's the same gentleman, if it was related to the Boyd Funeral Home, but my family has spoken about it." Even though Boyd's family owns the Boyd Funeral Home, there was no request for more information of juror Striggles at that time. She was, however, asked to confirm that what she had heard would not affect her deliberations. Specifically, among other assurances, when asked if what she heard would affect her deliberations, juror Striggles answered, "No, because I don't know."

As revealed at the federal evidentiary hearing, during the phone call to her mother—which, again, would have occurred after the questioning just discussed—juror Striggles asked her mother if she knew Boyd. In response, juror Striggles's mother mentioned Boyd's father's name, told juror Striggles that Boyd's brother was married to juror Striggles's cousin, and advised her that she could not participate in the case because of that family relationship. Juror Striggles claimed at the federal evidentiary hearing to have raised an issue about her familial connection to Boyd during voir dire, such that everyone in the courtroom should have heard it. However, this claim is inconsistent with the voir dire transcript.

As for juror Striggles's pretrial knowledge of the case, she revealed at the federal evidentiary hearing that the victim's body was found near her home, that her neighbors had discussed the case, and that her family was in the habit of talking about the Boyd family all the time and still does so. In reference to those discussions, juror Striggles explained at the federal evidentiary hearing that when she called her mother, she said, "[G]uess what, you know the body they found in Oakland Park, that's the same person. It's Lucious Boyd . . . ." Nevertheless, juror Striggles also testified at the federal evidentiary hearing that she does not "know the Boyds that well" and that her family primarily "deal[s] with" another family in the funeral business. Juror Striggles further testified that she did not know anything about the case except what was presented in the courtroom, that she was not trying to get on the jury, and that she did not "go in trying to convict" Boyd, as she did not know him. She felt that she was fair as a juror and based her verdict on the facts presented at trial, and nothing else.

Regarding the medication she was taking during voir dire and the trial, juror Striggles said that it made her feel lethargic and

unable to focus well. She testified that she had struggled to stay awake and felt "stoned."

Based on the new information received from juror Striggles, in combination with other matters that Boyd argued had a bearing on whether the omissions directly at issue show juror misconduct, Boyd requested a new trial or an evidentiary hearing. The additional matters Boyd argued should be considered included the following: juror Striggles's failure to reveal the full extent of her criminal history; an allegation that surfaced during Boyd's penalty phase that certain unnamed jurors were discussing the case and Boyd's personal history in the restroom of the courthouse;[2] and an allegation, rooted in Boyd's initial postconviction record and explored at the federal evidentiary hearing, that juror Striggles was untruthful during voir dire about her residential history. Boyd explained that the purpose of the evidentiary hearing would be to take the testimony of trial counsel.

---

2. On direct appeal, we affirmed the trial court's denial of Boyd's claims related to alleged juror misconduct of unnamed jurors in the restroom. *Boyd I*, 910 So. 2d at 178-79.

After receiving a response to Boyd's motion from the State, the postconviction court summarily denied the motion without explaining its ruling.

## II. ANALYSIS

Boyd raises two issues.  First, he contends that the postconviction court's failure to hold a case management hearing, known as a *Huff*[3] hearing, was error itself, particularly when paired with the lack of explanation for the denial of relief.  Second, Boyd argues that the denial of relief without an evidentiary hearing was error.  The State disagrees with both arguments and contends that Boyd's substantive claim is procedurally barred at least in part.

### A. Failure to Hold a *Huff* Hearing

In *Huff v. State*, 622 So. 2d 982, 983 (Fla. 1993), we held that, in proceedings on an initial postconviction motion in a case where the death penalty has been imposed, the postconviction court must hold a hearing where legal argument can be presented before ruling on the motion.  We have since explained that this requirement applies only to initial, not successive, postconviction motions, even

3.  *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

though the better practice is to hold such a hearing on any postconviction motion in a case involving the death penalty. *Taylor v. State*, 260 So. 3d 151, 157 (Fla. 2018) (discussing *Groover v. State*, 703 So. 2d 1035 (Fla. 1997)). Further, we have held that any error in failing to hold a *Huff* hearing on a successive postconviction motion is harmless if the motion is legally insufficient to warrant either relief or an evidentiary hearing. *Id.* at 157-58. What this means practically is that the postconviction court's failure to hold a *Huff* hearing on Boyd's motion is not reversible error in itself. *See id.* Thus, whether Boyd is entitled to relief depends on whether his motion was sufficient to require either an evidentiary hearing or a new trial. *See id.* As explained below, Boyd's motion did not require either.

B. Decision to Summarily Deny the Motion

We review the summary denial of a postconviction motion de novo. *Tompkins v. State*, 994 So. 2d 1072, 1081 (Fla. 2008). Such a denial is permitted "[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief." *Id.* at 1080-81 (quoting Fla. R. Crim. P. 3.851(f)(5)(B)). To determine if this standard is met, this Court must "accept the defendant's

allegations as true to the extent that they are not conclusively refuted by the record." *Id.* at 1081 (citing *Rolling v. State*, 944 So. 2d 176, 179 (Fla. 2006)).

### 1. Procedural Bar

This Court recently considered the procedural and substantive standards applicable to a postconviction claim of juror misconduct in *Martin v. State*, No. SC18-896 (Fla. May 6, 2021). The procedural requirements outlined in *Martin* are satisfied in this case for the portions of Boyd's claim that are based on information first discovered at the federal evidentiary hearing, as Boyd discovered that information within the year preceding the filing of his motion. *Martin*, slip op. at 13-16 (citing *Diaz v. State*, 132 So. 3d 93, 104-05 (Fla. 2013), and Fla. R. Crim. P. 3.851(d)(2)(A)). However, the State argues, and we agree, that Boyd's claim is procedurally barred to the extent it seeks to relitigate his prior claims concerning juror Striggles's failure to reveal her criminal history and the allegation of juror misconduct that arose during Boyd's penalty phase involving unnamed jurors who allegedly discussed extra-record information in the restroom during the guilt phase of the trial. *See Hendrix v. State*, 136 So. 3d 1122, 1124 (Fla. 2014) (concluding that a

successive postconviction motion may not be used to relitigate claims that were raised and rejected on direct appeal or in prior postconviction proceedings). To the extent Boyd's present claim points to the record created with respect to those prior claims as information that a factfinder could consider in assessing whether juror Striggles engaged in misconduct when she failed to reveal her familial connection to Boyd and her pretrial knowledge of the case, we recognize the argument and address it below.

## 2. Merits

Under *Martin,* to prevail on a standalone postconviction claim of juror misconduct for failing to provide information during voir dire, the defendant must establish two prongs: first, that the juror failed "to answer honestly a material question on voir dire," *Martin,* slip op. at 17 (quoting *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556 (1984)), and second, that the juror was actually biased against the defendant, *id.* at 18 (quoting *Boyd II,* 200 So. 3d at 697). We recognized in *Martin* that evidentiary hearings would sometimes be needed to resolve postconviction claims of juror misconduct. *Id.* at 20. However, we also cautioned that the questioning in such hearings would have to comply with section

- 10 -

90.607(2)(b), Florida Statutes (2020), which provides that "[u]pon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment," including "jurors' emotions, mental processes, or mistaken beliefs." *Martin*, slip op. at 21 (quoting § 90.607(2)(b) and then quoting *Marshall v. State*, 854 So. 2d 1235, 1240 (Fla. 2003)).

Regarding the first prong, we explained in *Martin* that "a mistaken but honest answer to a question—either because the juror mistakenly believed his answer was correct or because the question was unclear—will not warrant postconviction relief." *Id.* at 17-18. Additionally, we explained that "a 'material' question is one that has 'a natural tendency to influence, or [is] capable of influencing,' the determination of whether a juror is actually biased against the defendant." *Id.* at 18 (quoting *Neder v. United States*, 527 U.S. 1, 16 (1999)). Where the defendant alleges that a juror has been dishonest by failing to provide pertinent information in response to a material voir dire question, an evidentiary hearing is required to determine whether the apparent dishonesty was intentional unless

- 11 -

the record conclusively refutes any claim that it was or unless the point is rendered moot by the actual bias inquiry. *See id.* at 16-17.

Regarding the second prong, we explained in *Martin* that the definition of "actual bias" given in *Carratelli v. State*, 961 So. 2d 312 (Fla. 2007), but not its standard for proving it, is appropriate for a postconviction claim of juror misconduct. *Martin,* slip op. at 19-20. Thus, the actual bias required to be proven under *Martin* is "bias-in-fact that would prevent service as an impartial juror." *Id.* at 19 (quoting *Boyd II*, 200 So. 3d at 698 (quoting *Carratelli*, 961 So. 2d at 324)). In explaining the standard for proving actual bias in a postconviction claim of juror misconduct, this Court clarified the plurality decision in Boyd's initial postconviction appeal, which cited *Carratelli*'s requirement that actual bias be shown from the face of the voir dire record. *Id.* at 16.

We now apply *Martin*'s two-prong test to Boyd's present claim and conclude that summary denial was proper because Boyd's allegations of juror dishonesty and actual bias are legally insufficient to state a claim.

a. Failure to Answer Honestly a Material Question in Voir Dire

First, Boyd's motion is legally insufficient to establish that juror Striggles answered any material question dishonestly during voir dire. Boyd's claim concerning juror Striggles's medication does not relate to any question asked on voir dire and, therefore, cannot satisfy the first prong of the *Martin* standard.[4] Boyd's claims regarding juror Striggles's familial connection to him and her pretrial knowledge of the case do relate to material questions asked in voir dire but, as explained below, do not show dishonesty.

---

4. Moreover, as we cautioned in *Martin,* slip op. at 21-22, this claim cannot support postconviction relief because it is based on impermissible inquiry into juror Striggles's subjective mental state. *See Devoney v. State*, 717 So. 2d 501, 502 (Fla. 1998) (explaining that Florida law does not allow inquiry into a juror's subjective mental state, including any inquiry as to whether the juror "misunderstood the instructions of the [c]ourt [or] the statements of the witnesses or the pleading in the case" or any "other matter resting alone in the juror's breast" (quoting *Marks v. State Road Dep't*, 69 So. 2d 771, 774-75 (Fla. 1954))); § 90.607(2)(b), Fla. Stat. (2020) ("Upon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment."); *accord Tanner v. United States*, 483 U.S. 107, 113-16, 126-27 (1987) (holding, under a federal rule similar to the Florida rule governing juror inquiries, that a defendant was not entitled to a new trial where two jurors attested that some of the jurors, including one who came forward with an affidavit, had used drugs and alcohol during the trial in such a way as to affect their competence as jurors).

When juror Striggles's federal evidentiary hearing testimony is compared to the voir dire transcript, it is clear that, according to the testimony on which Boyd relies as the new information supporting his motion, juror Striggles did not learn that she had a familial connection to Boyd until at least the first break in voir dire, which occurred after the panel was asked about any familiarity they had with Boyd or the case. Notably, juror Striggles testified at the federal evidentiary hearing that, despite the familial relationship, she was "not really" familiar with the Boyd family and "didn't know anything about Boyd until [she] ended up on the jury for this case." The fact that juror Striggles asked her mother if she knew Boyd and was then advised of who he was in relation to his father and juror Striggles's cousin indicates that juror Striggles was not personally familiar with him before that phone call. Thus, juror Striggles's federal evidentiary hearing testimony does not support a finding that juror Striggles knew about her familial relationship to Boyd when she was asked if she knew him or recognized his name in a "criminal case setting." On the contrary, it indicates that she learned about a familial connection to him later and that, even then, she was "not really" familiar with him. For these reasons, the

portion of Boyd's claim pertaining to juror Striggles's familial connection does not satisfy the requirement of *Martin* that the juror be shown to have failed "to answer honestly a material question on voir dire." *Martin*, slip op. at 17 (quoting *McDonough Power Equip., Inc.*, 464 U.S. at 556).

Likewise, juror Striggles's prior knowledge of the Boyd family and the case was not a source of dishonesty in response to a material voir dire question. During voir dire, juror Striggles responded when potential members were asked if they had "any familiarity with the name Lucious Boyd in a criminal case setting." She said, "I have heard my family talk about it. I don't know if it's the same gentleman, if it was related to the Boyd Funeral Home, but my family has spoken about it." Juror Striggles then confirmed that she does not "believe everything [she] read[s] in the paper" and said that what she heard would not affect her deliberations. Thus, she revealed during voir dire that she had heard something about the case, and she was not asked to provide more information.

Juror Striggles did not reveal in response to the question about familiarity with Boyd's name in a "criminal case setting" (a) that her family's discussion of the case was not simply a casual

response to a news report but part of a habit of talking about the Boyd family "all the time" due to familiarity with them beyond news reports about this case and (b) that the victim's body was found in her neighborhood and was discussed within the neighborhood. However, her failure to volunteer this additional information does not rise to the level of dishonesty, given that juror Striggles said at the time that she was not even sure whether the case involved "the same gentleman" her family had discussed, her federal evidentiary hearing testimony does not contradict this claim, and juror Striggles was not asked any follow-up questions concerning the discussions she had heard. Juror Striggles might have revealed more if she had been asked more. *Id.* at 20-21 ("[A] standalone juror misconduct claim is premised on a prospective juror's alleged concealment of information during voir dire, despite counsel's reasonable efforts to elicit that information.").

Although juror Striggles stated at the federal evidentiary hearing that she told her mother during voir dire that the case was about Boyd and the body found in Oakland Park, and this statement arguably contradicts her statement during voir dire that she did not know if the case involved "the same gentleman" that her

family had discussed, these two statements are reconcilable. When both statements are considered together and in context of all of juror Striggles's testimony, they do not show dishonesty. Instead, they suggest that juror Striggles inferred that the case was indeed about "the same gentleman" after she mentioned the Boyd Funeral Home and, instead of being told that the case had no relation, was asked to confirm that she could put what she heard out of her mind. For these reasons, Boyd's motion does not show that juror Striggles was dishonest with respect to her pretrial knowledge. *Id.* at 15.

Although Boyd urges us to consider juror Striggles's failure to reveal her full criminal history in voir dire, her alleged failure to accurately represent her residential history in voir dire, and the fact that, at trial, there was an allegation that unnamed jurors were discussing the case in the restroom, these matters do not support an inference of material dishonesty in relation to the subject matter of Boyd's present motion. Notably, the federal district court found that juror Striggles's voir dire answers concerning her criminal history were not the result of a desire to deceive, but instead were "the product of confusion of her own creation." *Boyd v. Inch*, 2019

WL 3002922, at *20. Regarding juror Striggles's residential history, Boyd points out that, although she characterized herself as a "military brat" who is "from everywhere" during voir dire, information discovered during postconviction proceedings and discussed at the federal evidentiary hearing indicates that she had lived in one place for most of her life but had traveled often due to her father's position in the Army. This information is not materially inconsistent with her voir dire answers, which also included the fact that she had been in Fort Lauderdale "for about 30 something years on and off." As for the claim of improper juror discussions in the restroom, it is not clear that juror Striggles was one of the accused jurors, and, in any event, we explained on direct appeal that the trial court properly declined to question the jurors about this accusation because the testimony supporting it was neither coherent nor credible and the claim was inconsistent with the juror-sequestration procedures that were observed during the trial. *Boyd I*, 910 So. 2d at 178. As indicated in our discussion of the procedural bar, Boyd cannot relitigate this determination. *See Hendrix*, 136 So. 3d at 1124. None of these tangential matters

show that juror Striggles gave materially dishonest testimony with respect to the matters directly at issue in Boyd's timely claims.

Ultimately, with respect to both her familial connection and her pretrial knowledge, juror Striggles's federal evidentiary hearing testimony establishes that she was not proactive about engaging with the court as she made new connections in her mind, but not that she failed to answer a material question honestly when asked.

### b. Actual Bias

Boyd's motion also does not establish the actual bias required by *Martin*'s second prong.

Juror Striggles's federal evidentiary hearing testimony about her familial connection to Boyd shows only that she became aware of a distant familial connection to Boyd when she called her mother during voir dire but not that this connection impressed her one way or the other. This information does not indicate that juror Striggles "could not be fair and impartial and follow the law as instructed by the trial court." *Martin,* slip op. at 19 (quoting *Boyd II*, 200 So. 3d 696).

As for juror Striggles's federal evidentiary hearing testimony regarding pretrial knowledge, it indicates only that she was part of

or had at least overheard discussions of the case by her family and neighbors after the body was found near her home. It does not indicate anything further about the content of those discussions.

Further, juror Striggles's federal evidentiary hearing testimony is consistent with her statement in voir dire that what she heard before trial could not affect her deliberations because she "[didn't] know," apparently meaning that she did not know at that time whether Boyd was guilty. At the federal evidentiary hearing, juror Striggles testified that she did not know "anything about Boyd" until she was on this jury and that she reached her verdict based on the information presented in the courtroom, knowing nothing else about the case. Also, she felt she was fair to Boyd and testified that she did not "go in trying to convict the man" because she did not know him. Although such statements may not be dispositive when there are other indicators of bias, in this case, the statements that Boyd relies on do not establish actual bias when considered in context of the entire record, including juror Striggles's assurances of impartiality—both during voir dire and at the federal evidentiary hearing—and the decision of Boyd and his counsel to accept juror

- 20 -

Striggles as a juror without further questioning concerning her family's discussions of the case.[5]

At most, juror Striggles's testimony indicates that she had some level of preconceived notion about the case, but not a clear prejudgment of Boyd's guilt. A preconceived notion does not necessarily remove a juror's ability to be impartial, particularly where, as here, the juror declares that she can "lay aside [her] impression or opinion and render a verdict based on the evidence presented in court." *Irwin v. Dowd*, 366 U.S. 723 (1961). In this case, juror Striggles has declared that she was fair and rendered her verdict based on the evidence presented in court. The new information that Boyd has discovered about her pretrial knowledge does not contradict that declaration. Therefore, it does not state a legally sufficient claim of actual bias.

---

5. Additionally, Boyd contends that juror Striggles's failure to reveal her criminal history, her characterization of herself as a "military brat" who is "from everywhere," and the allegation concerning mid-trial juror discussions in the restroom support his theory that juror Striggles's failure to reveal her familial connection to him and pretrial knowledge of the case was due to bias. We disagree. For the same reasons discussed with respect to the material dishonesty prong, these matters do not support Boyd's claim that juror Striggles's was actually biased against him.

## III. CONCLUSION

For the foregoing reasons, we affirm the summary denial of Boyd's second successive motion for postconviction relief.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

The majority has correctly determined that Boyd's claim of juror misconduct, based on certain evidence revealed at the federal evidentiary hearing, is not procedurally barred. However, the majority fails to conclude that this evidence—involving juror Striggles's responses to material questions at voir dire—warrants an evidentiary hearing on Boyd's claim of juror misconduct. Thus, I respectfully dissent.

Striggles's testimony at the federal evidentiary hearing exposed significant inconsistencies with her answers at voir dire. At voir dire, when the prosecutor asked prospective jurors if they were familiar with participants or witnesses, some of whom had the last

name "Boyd," Striggles did not respond. Additionally, when prospective jurors were asked if they were familiar with the name "Lucious Boyd" in a criminal context, Striggles merely responded that she had heard her family talk about the name, but she was not sure if the discussion was related to Boyd or, more generally, to the Boyd family's funeral business.

However, at the federal evidentiary hearing, Striggles testified that she was familiar with the name "Boyd" because her family talks about Boyd and his family frequently: "My family knows the Boyds as well as the Mizells and all of them. Okay. They talk about all of them and they are still talking about them." Additionally, when asked about her prior knowledge of Boyd's case, Striggles said: "Okay. So, I heard about it. I mean, everybody heard about it. Even my neighbors heard about it. They found the body in Oakland Park. I didn't know it was related to the guy I was on the jury for." Upon further questioning about her knowledge of the murder, she stated: "Yes, it was there by my house. It was out there by my house."

Particularly disturbing was the revelation at the federal evidentiary hearing that during a break in voir dire, Striggles called

her mother to talk about Boyd. This phone call occurred after the prosecutor questioned prospective jurors about their familiarity with Boyd and their knowledge of his case. During the phone call, Striggles said to her mother: "[G]uess what, you know the body they found in Oakland Park, that's the same person. It's Lucious Boyd." Striggles testified that during the phone call, her mother revealed the extent of their familial relationship with Boyd and told her that she should not serve on the jury. However, Striggles did not bring this information to the Court's attention when voir dire resumed. In fact, even after another prospective juror suggested the following day that he might be familiar with the Boyd family and possibly Boyd himself, Striggles remained silent about her own connection to Boyd.

The majority concludes that because counsel asked about prospective jurors' familiarity with the name "Boyd" and Boyd's criminal case *before* the phone call, Striggles could not have answered the voir dire questions dishonestly. However, the timing and substance of the phone call strongly suggest that Striggles made the connection between the case involving the body found in the neighborhood park and Boyd *before* the break in voir dire,

- 24 -

because she testified that she told her mother—apparently without prompting—that the case involved Boyd. It appears quite clear from the record that Striggles had ample prior knowledge of Boyd and his case when asked at voir dire but did not reveal it.

The revelations at the federal evidentiary hearing call into serious question Striggles's service on the jury that convicted Boyd, and they should, at a minimum, be further explored at an evidentiary hearing in the circuit court. Because Boyd's motion for postconviction relief based on a claim of juror misconduct is legally sufficient, I dissent.

An Appeal from the Circuit Court in and for Broward County,
      Andrew L. Siegel, Judge – 061999CF005809A88810

Neal Dupree, Capital Collateral Regional Counsel, Suzanne Myers
Keffer, Chief Assistant Capital Collateral Regional Counsel, and
Scott Gavin, Staff Attorney, Capital Collateral Regional Counsel,
Southern Region, Fort Lauderdale, Florida,

      for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Leslie T.
Campbell, Assistant Attorney General, West Palm Beach, Florida,

      for Appellee